THE PEOPLE OF THE STATE OF NEW YORK ex rel. VOLGA ADAMS, Relator, *v.* LORETTA V. MORAN, as Warden of Women's House of Detention, New York City, Defendant.

Supreme Court, Special Term, New York County, June 20, 1962.

*Joseph Zitomer* and *Steven Frey* for relator. *Frank S. Hogan,* District Attorney (*Burton Roberts* and *Joseph A. Phillips* of counsel), for defendant.

FRANCIS X. CONLON, J. This habeas corpus proceeding seeks to inquire into the alleged illegal detention of the relator and it is her argument that she has been imprisoned and restrained of her liberty based upon the following facts:

The relator was indicted under indictment No. 4939 of 1959 New York County for the crime of grand larceny in the first degree on two counts in violation of section 1294 *et seq.* of the Penal Law. The relator was tried by a jury and its deliberations resulted in a disagreement or " hung " jury.

It is the relator's contention that the jury was prevented from rendering a "not guilty" verdict in favor of the relator by reason of the demonstrated bias and disqualification of one juror exhibited during the trial, thereby subjecting and exposing the relator in fact and in law to former jeopardy. Buttressing her argument, the relator submits the affidavits of several jurors attesting to the fact that they were 11 to 1 for acquittal and that the dissenting vote was exercised by juror No. 3, who "from the beginning * * * was filled with prejudice against Volga Adams". In the affidavits they further state that there were incidents both in the court and in the jury room which stood out in the minds of "us all" and which were indicative of his "hatred" for any gypsy (the relator). During the deliberations, they assert, he declared vehemently that he was convinced that all gypsies are thieves and liars, and "in a million years would not acquit the relator".

It is also pointed out that during the course of the trial, defense counsel moved the trial court, on at least three occasions, at the Bench, to replace juror No. 3, with one of the alternate jurors, for the reason that this juror was openly displaying his hostility and prejudice and had already formed an opinion. It is alleged that juror No. 3 was seen to rise to his feet infuriated with anger, violently throw to the floor a pocket size notebook upon which he had been writing; make some verbal, unintelligible outburst, and appeared livid with anger by the reddening of his neck, face and forehead, the widening of his eyes and grimaces of his mouth.

It is under these circumstances, the relator argues, that she was once tried and the aforesaid manner in which the jury was prevented from delivering an acquittal was tantamount to an acquittal, and, were the relator forced to go to trial on the basis of a disagreement, it would constitute former jeopardy.

This is a very novel and unusual ground to bar the prosecution of an indictment on the ground of former jeopardy. To assert that the "antics" of a juror, either in the jury box or in the jury room, after he has been properly interrogated and sworn, were the cause of an improper verdict constituting a bar to a subsequent prosecution, might very well be a challenge to the orderly accomplishment of the purpose of trial by jury. The "discussion hall" is a sacred place and what transpires among the jurors prior to a disagreement does not concern anyone but the jurors themselves. The emotional reaction of a juror in the courtroom, unless it interferes with the orderly procedure of the trial, cannot be restrained by any ruling of the presiding Justice. The juror is entitled to react within the confines of

proper decorum to the testimony presented. The court is sympathetic with the plight of the other jurors. They showed a willingness to serve conscientiously when they were sworn and their affidavits indicate that they felt they were hampered by the obvious display of hostility on the part of juror No. 3. This court is helpless to disturb the thinking and the frustration of the jurors. By no available means can the court fathom the operation of the mind of a particular juror in the jury box or in the jury room.

Section 332 of the Code of Criminal Procedure establishes the rule with reference to former jeopardy. It provides (subd. 3) that " A plea of a former judgment of conviction or acquittal of the crime charged " is a bar to the trial of the indictment. In *People* v. *Taft* (174 Misc. 1033) it was held that defendant could not complain that he had been placed twice in jeopardy where he did not plead a former judgment of conviction or acquittal.

In the case at bar, there is no former judgment of conviction or acquittal. The most you have is a " hung jury ", discharged because of pressing necessity and without rendering a verdict and with counsel's tacit consent. (See *Canter* v. *People,* 1 Abb. Ct. App. 305; 5 Abb. Prac. [N. S.] 21, 38 How. Prac. 91, 2 Transc. App. 1.)

Section 428 of the Code of Criminal Procedure delineates three grounds upon which the jury may be discharged before agreement, after they have retired to consider their verdict, and section 430 allows the case to be retried in the event of a discharge under those circumstances. The grounds are injury or casualty to the defendant or a juror, consent of both prosecutor and the defendant, and the declaration of the jury that they are *unable* to agree upon a verdict after the expiration of a reasonable time for consideration. (See *People* v. *Fishman,* 64 Misc. 256.) In other circumstances, the discharge of a jury is commonly held to bar a subsequent prosecution. The case before the court falls into the third category of section 428 of the code. This is a jury which could not agree after the expiration of considerable time for consideration, and its discharge is no bar to a subsequent prosecution.

There is no allegation in the moving papers that the jury was arbitrarily discharged without the consent of the relator. A leading case in point is *People ex rel. Stabile* v. *Warden of City Prison* (202 N. Y. 138). In that case, the relator was entitled to a dismissal on the ground of former jeopardy. There, the jury was discharged without the consent of the defendant, and the court, of its own volition, wrongly using its discretion, prior to a declaration by the jury that they could not agree, discharged

it without a verdict. The court held that he was entitled to his liberty on habeas corpus.

Here, there is no question that the jury, having disagreed after a reasonably sufficient lapse of time, was properly discharged by the court. Sections 428 and 430 are applicable.

With reference to the argument advanced by relator that defense counsel made at least three motions to replace juror No. 3 with an alternate juror, attention is directed to section 358-a of the Code of Criminal Procedure. In substance, this section provides that an alternate juror may be substituted for any of the other sworn jurors who may die or become otherwise *unable* to serve before the final submission of the case. In the trial of this indictment, the court relying upon its discretion, properly refused to substitute the alternate for the regular juror. There was no reason, in the thinking of the court, for a substitution of jurors.

Finally, the contention of the relator that the verdict of the 11 remaining jurors, excluding No. 3, should be the verdict of the jury, is not a valid argument. The rule that a verdict in a criminal case requires the vote of all 12 jurors is immutable and historic. There can be no stipulation or consent for less (*People* v. *Cosmo,* 205 N. Y. 91; *Cancemi* v. *People,* 18 N. Y. 128; *People* v. *Diaz,* 10 A D 2d 80). In all the circumstances, the writ must be dismissed.