OPINION OF THE COURT
Betty D. Friedlander, J.
Defendant has moved under CPL 440.10 (subd 1, pars [f], [h]) to vacate a judgment of conviction for murder in the second degree, entered against him on February 23, 1976 after a jury trial. Defendant claims that his statutory and constitutional rights to a fair trial were violated when the Trial Judge failed to disqualify, or to further question, a juror who approached the Bench midtrial to advise the Judge that he knew two prosecution witnesses and to question his continued qualification for service on the jury in defendant’s case.
At a hearing held on defendant’s motion, testimony was taken from the attorney who prosecuted defendant’s case in 1976, the attorney who represented defendant at trial, and the juror who raised the questions before the Trial Judge. Judge Johnson, who presided at defendant’s trial, died in 1976.
*166 The prosecuting attorney testified that he did not recall that questions concerning a juror’s capacity to serve had been brought to his attention during the course of the trial, although he indicated that after the trial, he had spoken to a juror who reported having communicated with the Judge concerning a problem which had ultimately not interfered with his judgment as a juror. He also testified that the names of the two witnesses probably did not come up during voir dire, as it was not his practice to inform jurors of prospective witnesses’ names, particularly where — as here — an informant or a rebuttal witness was involved.
The defense attorney testified that he had not learned that a juror had approached the Trial Judge until the defendant made the motion resulting in the instant proceeding. He also testified that he did not recall that the names of the two witnesses in question were raised during voir dire, and that there were alternate jurors who probably sat through the entire trial.
Neither attorney recalled that a hearing concerning any juror’s qualifications was held during defendant’s trial.
The juror, David Moriah, testified that he had approached the Bench on two separate occasions during defendant’s trial to indicate that he was acquainted with a prosecution witness who had just testified. Moriah recalled that on the first such occasion, he had approached the Bench as the jury was recessing after the testimony of one Jeffrey Grummons — a prison informant who had reported on defendants behavior while in jail awaiting trial — to tell the Trial Judge that he knew Grummons “rather intimately”, having previously lived in the same household with him. He indicated that he may have initiated the conversation by telling the Trial Judge he would have to be disqualified, although he did not specifically recall making such a statement. He also recalled that the Trial Judge may have questioned him further about the capacity in which he knew Grummons — which was based on Moriah’s work, as a probation officer and drug counselor, in supervising a drug abuse halfway house in which Grummons had resided for one or two months several years earlier — and may have inquired as to Moriah’s continued capacity to render an impartial judgment. While Moriah testified *167 that he had no specific recollection of any such questions on the Judge’s part, on cross-examination he indicated that he was certain he told the Judge that he was Grummons’ probation officer at the time they lived in the same house, that during the conversation he certainly did not tell the Jiidge that he could not continue to be fair, and that he probably did tell the Judge that he could continue to be fair if the Judge asked. While Moriah clearly indicated that he only specifically recalled telling the Judge about the relationships, he recalled in general that the conversation at the Bench was brief, lasting only a minute or so and ending when the Judge told him not to worry about it, and that neither attorney was at the Bench during the course of the conversation.
As to the second such communication with the Judge, Moriah testified that during a recess following the testimony of Professor David Levitsky, a university professor called to rebut expert defense testimony concerning the effects of solvent abuse, he again approached the Bench to say that he knew Levitsky, with whom he had served on various drug abuse panels over several years; that the Trial Judge again may have asked further questions concerning the extent of the relationship and its effect on Moriah’s impartiality; and that the conversation again ended when the Judge told him not to worry about it. He did not recall that anyone else was present during this interview or that the Judge informed the attorneys of his concerns. He did recall that he was present at no discussion or hearing with the attorneys concerning either of his questions during the trial.
On this basis of this evidence, defendant makes three arguments.
(1) First, defendant claims that the trial court’s failure to disqualify the juror Moriah violated defendant’s statutory right to a trial by an impartial jury, as that right is defined in CPL 270.35 and 270.20 (subd 1, par [c]).
In advancing this claim, defendant points out, correctly, that the disqualification of a sitting juror is governed by CPL 270.35, which provides for mandatory dismissal of a juror if, during trial, the trial court finds, from facts unknown at the time of jury selection, “that a juror is *168 grossly unqualified to serve in the case”. Defendant also correctly points out that case law construing CPL 270.35 utilizes the grounds for challenge for cause during jury selection, as delineated in CPL 270.20 (subd 1), as the basis for determining whether a juror is “unqualified” to serve under CPL 270.35 (cf. People v Meyer, 78 AD2d 662).
Applying CPL 270.35 and 270.20 (subd 1) to the instant case, then, defendant urges the court to consider Moriah’s relationships with the two witnesses as instances of “implied bias” under CPL 270.20 (subd 1, par [c]), requiring dischargé whether or not the juror can aver that the relationships will not prejudice his judgment (cf. People v Branch, 46 NY2d 645). Defendant relies on People v Meyer (supra), People v Branch (supra), and People v Sellers (73 AD2d 697) — cases construing the “implied bias” provision of CPL 270.20 (subd 1, par [c]) — to argue that Moriah’s prior contacts with each of the witnesses in the instant case required a finding of “implied bias”, under the subprovision of CPL 270.20 (subd 1, par [c]) requiring disqualification of a prospective juror who bears “some * * * relationship [other than consanguinity or prior adversarial action] to [a prospective witness] of such nature that it is likely to preclude him from rendering an impartial verdict”.
Defendant asserts, in particular, that the relationships held to require disqualification in Meyer (supra), Branch (supra), and Sellers (supra) consisted of limited business and casual social contacts less intimate, less personal, and therefore less compelling than Moriah’s contacts with Grummons and Levitsky. Thus, in Meyer, defendant points out, the Second Department held that the juror should have been disqualified when he revealed that he personally knew a prosecution witness who transacted his insurance business with the juror’s firm and was intimate with the juror’s employer, and that he had a negative opinion of a defense witness who had worked for the employer before the juror joined the firm. Likewise, in Branch, defendant argues, the Court of Appeals upheld the disqualification as a juror of a police officer who had developed a working relationship with the prosecutor which included occasional after-hours socialization. And in Sellers, defendant asserts, the court disqualified two jurors who had no apparent *169 personal knowledge of prospective prosecution witnesses but whose life experiences approximated the experiences which would form the basis for such witnesses’ testimony.
In comparison to these limited business contacts and impersonal acquaintanceships with witnesses, defendant argues, Moriah’s role as Grummons’ probation officer, housemate, and counselor provided him with personal knowledge of the witness’ character, while his service on professional panels with Levitsky indicated a relationship based on common interest in professional problems; and hence on the basis of the case law cited, the personal and professional knowledge implicated in each of these relationships mandated disqualification under CPL 270.20 (subd 1, par [c]) and 270.35.
(2) In addition to this statutory claim, defendant argues, secondly, that the trial court’s failure to disqualify Moriah violated his rights to a fair trial by an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution. Defendant cites the Federal Circuit Court cases of Jackson v United States (395 F2d 615) and United States ex rel. De Vita v McCorkle (248 F2d 1, cert den 355 US 873) to support the proposition that when facts revealed after trial — in both cited cases, concerning a juror’s prior experience with a crime similar to the one being tried — give rise to a presumption that a juror lacked impartiality, the trial has been defective in Sixth Amendment terms. Defendant also points out that even a Trial Judge’s pretrial failure to inquire into possible biases held by potential jurors may invalidate a conviction on Fourteenth Amendment grounds, citing Ham v South Carolina (409 US 524), People v Williams (41 AD2d 611), and People v Rubicco (42 AD2d 719, affd 34 NY2d 841).
(3) Finally, as to both statutory and constitutional claims, defendant argues — citing People v Meyer (supra) as to the statutory claims and Ham (supra) and Rubicco (supra), among others, as to the constitutional claims — that at the very least the Trial Judge, when apprised of these relationships, should have notified the defense and prosecuting attorneys and held a hearing to ascertain whether each such relationship was “of such nature that it [was] likely to preclude [the juror] from rendering an *170 impartial verdict” pursuant to CPL 270.20 (subd 1, par [c]), or whether the facts raised a presumption or a possibility of partiality otherwise impermissible in Sixth and Fourteenth Amendment terms.
Upon consideration of defendant’s claims, in light of the evidence adduced in their support, however, the court concludes that the trial court’s failure to disqualify the juror Moriah, or to conduct a hearing as to the extent of Moriah’s relationship with either or both of the witnesses, did not violate defendant’s statutory or constitutional rights to a fair trial. Defendant having failed to sustain his burden of proving facts necessary to sustain his claims under CPL 440.30, or to have made a prima facie showing of irregularities of constitutional dimensions requiring application of a higher standard of review, and the court having concluded, beyond a reasonable doubt, that defendant’s trial was fair and in accord with due process of law despite any irregularities suggested in the evidence adduced in the instant proceeding (cf. People v Phillips, 87 Misc 2d 613, affd 52 AD2d 758, application for lv to opp den 39 NY2d 949), defendant’s motion is denied.
(1) As to defendant’s statutory claims, while the court agrees that CPL 270.35 must be construed in light of CPL 270.20, it cannot conclude that the trial court was required to find the juror Moriah “grossly unqualified” on the basis of the information brought to the Trial Judge’s attention during trial, or that, on the basis of such information, a further hearing was necessary.
The evidence before this court indicates that Moriah told the Trial Judge, in essence, that he had had prior professional contact with two prosecution witnesses. Specifically, Moriah appears to have told the Judge that he had lived in the same household as Grummons, having served as a probation officer and residence supervisor during the one or two months that Grummons resided in a halfway house; and that Levitsky and he had served with others on some six community drug abuse panels over a period of several years.
These revelations — establishing that Moriah had been probation supervisor of one witness and fellow expert panelist of another — indicated, at most, that in the past *171 Moriah had had professional contact in the local community with, respectively, a member of the client population served by his profession and a professional colleague who also dealt with that population. The court notes that such professional relationships certainly lacked the elements of ongoing business relationship, personal friendship, or recreational socializing present in the Meyer (supra) and Branch (supra) cases cited by defendant. Nor did they signal that the juror’s personal experiences so closely approximated those of the witnesses or the circumstances of the crime as to require disqualification under the defendant’s reading of Sellers (supra). Indeed, the limited working and professional relationship, which had terminated before trial, that was brought to the Trial Judge’s attention by the juror Moriah bore closer kinship to the limited working relationship between candidate and campaign worker held by the Court of Appeals not to require disqualification (see People v Provenzano, 50 NY2d 420), than to the ongoing social relations or the traumatic personal experience discussed in Meyer, Branch and Sellers, the cases defendant relies on.
The court also notes that because the information bearing on disqualification only came to the trial court’s attention during the course of trial, and must therefore be evaluated under the “grossly unqualified” standard of CPL 270.35, the defendant in the instant proceeding bears a stronger burden than that borne by the defendants in Branch (supra) and Sellers (supra), where the challenges in question, arising during voir dire, were governed by CPL 270.20 (cf. People v Meyer, supra, p 664; and see People v Phillips, supra, p 630 [grounds for midtrial discharge of a juror must be substantial]). The court also notes that the Meyer court did not consider the juror’s social and/or business knowledge of the prosecution witness in the case alone sufficient to require disqualification; the Meyer court held only that, given the conjunction of an instance of possible “implied bias” — that is, based on the existence of a prior relationship derived from the juror’s intimacy with his employer’s clientele — with an instance of possible “actual bias” based on a negative opinion of a witness not personally known to the juror, disqualification should have been *172 the course chosen by the court. In the instant case, where the juror advised the court of two separate and purely professional relationships and gave no indication that he had any actual opinions, whether negative or positive, about the character or credibility of either witness, this court cannot conclude that the Trial Judge erred in failing to find the juror “grossly unqualified” to continue to serve under CPLR 270.35.
Nor can this court conclude that the trial court was in error on statutory grounds in failing to hold a hearing to inquire further into the juror’s relationships with the two witnesses. The court notes that the procedure for midtrial disqualification of a juror delineated in CPL 270.35 does not require a Trial Judge to either hold a hearing or inform counsel concerning belatedly discovered relationships raising the possibility that a juror is unfit to serve; it merely requires that the Judge “find” the juror “grossly unqualified” before discharging him and substituting an alternate. The trial court may, in fact, choose to make its finding on the basis of a hearing, or to explore the juror’s qualifications further with counsel in chambers (cf. People v Meyer, supra); in the case of a juror’s misconduct or midtrial expression of actual bias, the court may be required to hold a hearing before a juror is discharged (cf. People v Argibay, 57 AD2d520, affd 45 NY2d 45; People v Ivery, 96 AD2d 712), and at such a hearing the defendant may assert the right to make a showing of prejudice warranting discharge (cf. People v Argibay, supra, and dicta in People v Coceo, 305 NY 282, 286; People v Phillips, supra, p 629; People v Sellers, 73 AD2d, at p 697); and where a question of jury misconduct is raised in a motion to set aside the verdict, denial of a hearing to explore the nature of the misconduct or its prejudicial effect may be an abuse of discretion (cf. People v Catalanotte, 67 Misc 2d 351). But in general, when the possibility of a juror’s disqualification arises during trial, the procedure to be followed in determining whether grounds for discharge exist at all appears, under CPL 270.35, to be discretionary with the trial court (compare People ex rel. Adams v Moran, 35 Misc 2d 1078, affd 18 AD2d 802, affd 13 NY2d 660), particularly in a case of “implied bias,” where the court need not explore the actu *173 ality of prejudice or give the juror the opportunity to aver that his pre-existing state of mind has had no effect on his ability to serve impartially, but must merely ascertain the nature of a divulged relationship and use its judgment to assess whether such a relationship is “likely” to preclude the juror from rendering an impartial verdict.
In the instant case, the evidence adduced at the hearing held on the instant motion indicated that the juror Moriah’s initial descriptions of his contacts with the witnesses, however brief and whether volunteered or given in response to the Judge’s questions, were adequate to apprise the Judge of both the duration and the depth of Moriah’s relationship with each witness, and to enable the court to determine as a matter of law that such relationships were innocuous professional contacts, unlikely to preclude Moriah from rendering an impartial verdict under CPL 270.35 (cf. People v Phillips, supra, p 630). The evidence also indicates that, after hearing Moriah’s descriptions, Judge Johnson may, in fact, have inquired further into the nature of the juror’s relationships and obtained the juror’s own assessment of the likelihood that his knowledge of either witness would preclude him from rendering an impartial verdict. Given the adequacy of Moriah’s initial descriptions and Moriah’s own vague recollections, however uncertain, that the court may have probed further to ascertain the parameters of the relationship Moriah described, it appears that a further hearing would not have provided the Judge with any new or necessary material upon which to base a determination of the likelihood that Moriah would be “grossly” unable to render an impartial verdict on the basis of his prior relationships with the witnesses in question. Under such circumstances, this court cannot conclude that Judge Johnson’s handling of Moriah’s revelations was procedurally improper under CPL 270.35, or that his failure to conduct a hearing or to advise counsel of Moriah’s hesitations violated defendant’s statutory rights to a fair trial.
(2) As to defendant’s constitutional claim, the court notes that, while defendant is certainly guaranteed the right to a trial by impartial jurors and in accord with due process of law, the cases defendant cites to support his argument that *174 Moriah was not impartial under constitutional standards are not persuasive or precisely in point in light of the evidence adduced as to juror partiality and judicial procedures in defendant’s case.
While the United States Supreme Court, in Aldridge v United States (283 US 308, 310), long ago made clear that the trial court’s discretion in questioning prospective jurors to determine whether they could make impartial judgment was limited by “the essential demands of fairness”, and implied that fairness would require disqualification when, upon such inquiry, a juror displayed prejudice relating to matters material to the case, such as the race or religion of the defendant, Aldridge itself and the cases applying its rationale have dealt almost exclusively with the circumstances in which the possible existence of “actual bias”, on a material matter, is in issue, and not, as here, where the alleged impartiality is a matter of “implied bias” created by State statute. Thus, in Ham, v South Carolina (409 US 524, supra), the Supreme Court applied the constitutional limits to judicial discretion articulated in Aldridge to State court jury selections in which it was likely that “actual bias” against racial minorities would materially affect the verdict against a black defendant, where the State statutory scheme permitted challenges for bias and authorized the trial court to conduct voir dire of the jury panel to identify biased jurors. Likewise, in the New York case of People v Williams (41 AD2d 611, supra), the Appellate Division, citing Ham, reversed a conviction on the grounds that the trial court had refused to permit voir dire as to “actual bias” in the form of prejudice against persons of defendant’s race.
Moreover, not even all forms of potential “actual bias” appear to be subjects for exploration on mandatory voir dire, and/or grounds for mandatory disqualification, on constitutional grounds. This court notes that in Ham (supra), the Supreme Court refused to limit the trial court’s discretion, in deciding whether to conduct voir dire, on constitutional grounds when the potential for “actual bias” related to the jurors’ possible feelings about the defendant’s hairstyle — implying that it was up to the Judge alone to decide whether “actual bias” on grounds other *175 than race existed and/or would suffice to disqualify a juror. The court also notes a similar hesitation to mandate exploration — and/or disqualification — for nonracial bias on constitutional grounds in People v Rubicco (34 NY2d 841, 843, supra), a case also cited by defendant, in which the New York Court of Appeals distinguished the constitutional error involved in the court’s refusal to permit exploration of jurors’ possible racial biases from the purely discretionary decision not to explore — and hence not to disqualify jurors — for possible ethnic biases.
In the instant case defendant makes no claim of “actual bias” and the evidence indicates that the juror may have, and would have, told the Judge that his contact with the witnesses would not affect his judgment as a juror, undercutting any claim of “actual bias” defendant may have asserted. However, defendant points to Jackson v United States (395 F2d 615, supra), and United States ex rel. De Vita v McCorkle (248 F2d 1, cert den 355 US 873, supra), to argue that — the “actual bias” basis for the Aldridge (supra) and Ham (supra) decisions and the limits of Aldridge articulated in Ham notwithstanding — disqualification of a juror on the basis of “implied bias” may also be constitutionally mandated.
However, the court notes that in both cited cases, the postconviction conclusion that a juror was not impartial under constitutional standards was based on a posttrial finding that the juror had concealed, on voir dire, the fact that he had prior to trial been involved as victim or innocent participant in a situation not unlike the crime for which the defendant had been tried — experiential facts held to raise a manifest presumption, in logic and in common sense, that the juror could not be intellectually or emotionally impartial in considering the evidence against any alleged malefactor in a similar situation, particularly, as in De Vita (supra), where the issue facing the jury was the imposition of the death penalty. The court cannot conclude that any such logical and commonsense presumption in fact arises when the alleged partiality involves not a juror’s concealment of his personal identification with the crime or its victim, but his belated discovery of a purely coincidental relationship with a witness whose testimony *176 may have more or less materiality to the issues at trial — here, involving aspects of the defendant’s behavior which relate to the crime or the surrounding situation only as they involve defendant’s prior and subsequent states of mind. In such a case, where there is no evidence of actual prejudice or overt psychological pressure on the juror (compare Remmer v United States, 350 US 377), and where there is no presumption of patent partiality, neither Federal nor State law appears to require disqualification of a juror on constitutional grounds merely because of his marginal relationship with a witness. Indeed, the existence of any bias at all in such a juror arises, not as a matter of inarguable logic and commonsense experience but as a creature of State statutory law, which in New York, as defendant points out, has only recently expanded to incorporate into its provisions on jury qualifications, in derogation of common law, the concept of “implied bias” arising from a relationship based on factors other than consanguinity or prior litigation, and specifically leaves the question of which, if any, relationships are likely to signify partiality for case-by-case determination on the part of the Trial Judge.
The court having determined that the Trial Judge in the instant case followed the statutory procedures in deciding midtrial that a statutorily defined bias requiring disqualification of a juror did not exist (compare Ham v South Carolina, 409 US, at p 527), the court concludes that defendant’s right to an impartial trial, governed by due process of law, has not been violated.
(3) As to defendant’s claim that his fair trial and due process rights were violated by the court’s failure to conduct a hearing or inform counsel concerning Moriah’s revelations, the court concludes that an inquiry in the presence of attorneys was not constitutionally required in the instant case.
While defendant argues that Federal and State case law point to the existence of a constitutional duty, on the part of the trial court, to make further inquiry into Moriah’s alleged partiality, the court again concludes that the decisions defendant cites hinge on procedural and substantive factors at variance with the facts of the instant case. Thus, *177 in People v Catalanotte (supra), as the court has already noted, the issue of juror misconduct arose not midtrial but upon a posttrial motion, a proceeding in which a hearing is now mandated under appropriate circumstances by CPL 330.40, so that denial of a hearing under those circumstances is concededly an abuse of judicial discretion. In People v Coceo (supra), while the appellate decision commented upon the trial court’s failure to inform defense counsel of juror misconduct which came to its attention during trial, defendant’s conviction was not reversed on this ground but because the Court of Appeals concluded that the misconduct in question — unlike the relationship in this case — was inherently prejudicial to the defendant. And as this court has already noted, in Aldridge v United States (supra), and its progeny — Ham v South Carolina (supra), People v Rubicco (supra), and People v Williams (supra) — the trial court’s duty to inquire or to permit inquiry by counsel concerning bias on the part of a potential juror or panel was held to arise only where constitutionally proscribed racial or religious prejudices were implicated. In Ham and Rubicco, the United States Supreme Court and the New York Court of Appeals, respectively, made it clear that the trial court’s duty to inquire or permit inquiry was not triggered by allegations of potential “actual bias” on grounds less constitutionally sensitive than race; and none of the cases cited extends that duty to allegations of bias merely implied by common-law or statutory definition, like those in the instant case.
Moreover, while defendant in his memorandum of law asserts that the juror Moriah approached the Judge “asking to be disqualified” — an assertion implying that the juror specifically raised doubts about his own impartiality which the Judge should have seen as an indication of either “actual bias” triggering in-depth inquiry by the court or counsel under Aldridge (supra) and its followers, or “implied bias” with consequences more overtly prejudicial than the establishment of a manifest presumption of partiality requiring dismissal under Jackson v United States (supra), and United States ex rel. De Vita v McCorkle (supra) — the facts adduced at the hearing on the instant motion indicated that Moriah approached the Bench *178 merely to inform the Judge of his prior relationships with the two witnesses and to allow the Judge to determine whether such relationships established some legal barrier to his further service as a qualified juror. Moriah’s testimony indicates that he expressed no opinions concerning the credibility of either witness and made no assertions that the witnesses’ testimony was likely to sway his verdict one way or another. Indeed, Moriah recalled in his testimony that if asked whether the relationships would affect his verdict, he responded in the negative; and on cross-examination he indicated that his reason for approaching the Bench was his belief that it was the responsibility of the Judge, and not the jurors, to decide whether prior relationships were barriers to jury service. On the basis of this evidence, the court cannot conclude that the trial court should have treated Moriah’s statements either as indicators of potential actual bias constitutionally requiring further investigation under Aldridge and Ham (supra), or as triggers of a manifest presumption of bias perhaps constitutionally warranting further inquiry under Jackson and De Vita.
Nor can the trial court be said to have violated constitutional due process rights derived from statutory procedural requirements — the articulated basis for the decision in Ham (supra), that the trial court should have permitted the defendant to question potential jurors. The court notes that in Ham, the State statute specifically provided not only for challenges for cause but for voir dire of the jury panel to establish which panelist should be so challenged. In the instant case, while State statute does provide for the midtrial disqualification of jurors who are determined to be “grossly unqualified” to serve, it does not prescribe a particular procedure for determining which jurors should be disqualified, except insofar as it leaves the decision to disqualify to the Trial Judge. Hence this court concludes that the due process rationale for mandating further inquiry into juror bias articulated in Ham is not applicable to the instant case.
Since the court has concluded that the trial court adequately followed statutory procedures and that the relationships adverted to in the juror’s communications with *179 the Trial Judge were not such as to trigger a constitutional duty, on the part of the Trial Judge, to investigate further, defendant’s claim that he had a constitutional right to a hearing or to inquiry by counsel must be rejected.
The court having determined that the trial court’s failure to disqualify or further question the juror Moriah did not violate defendant’s statutory or constitutional rights to a fair trial by impartial jurors, in accord with due process of law, and the court further noting, as a matter of policy, that the Court of Appeals has recently held that efforts to undermine a jury verdict by systematically questioning the individual jurors long after they have been dismissed in hopes of discovering some form of misconduct should not be encouraged (see People v Friedgood, 58 NY2d 467), defendant’s motion is denied.