■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER RENTZ, Appellant. — Appeal, by permission, from an amended order of the County Court of Tompkins County (Friedlander, J.), entered August 23, 1983, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crime of murder in the second degree, after a hearing.

Order affirmed, upon the opinion of Tompkins County Judge Betty D. Friedlander (*People v Rentz,* 120 Misc 2d 165). Kane, J. P., Main, Yesawich, Jr., and Harvey, JJ., concur.

Mikoll, J., dissents in the following memorandum. Mikoll, J. (dissenting). I respectfully dissent. Defendant is now appealing the denial of his motion to vacate his conviction. Defendant alleged as grounds for his motion ineffective assistance of counsel, errors in the jury charge on intent, failure to disqualify a juror, failure to hold a hearing on the juror's alleged bias, and failure to suppress a statement made by defendant to the police. County Court denied defendant's motion in all respects except to order a hearing on the issue of whether a juror should have been disqualified and on the issue of whether the trial court erred in failing to give notice and a hearing on the alleged bias. County Court found that defendant failed to sustain his burden of proving facts entitling him to the disqualification of the juror pursuant to CPL 440.30 or to have made out a prima facie showing of irregularities of constitutional dimension.

Defendant claims that the juror, David Moriah, was grossly unqualified as a juror because of his relationship with two

prosecution witnesses, Jeffrey Grummons and David Levitsky. It is claimed that his implied bias tainted the trial. As to witness Levitsky, the argument is unavailing. Moriah and Levitsky had only a slight professional relationship of no substantial depth which did not preclude Moriah from acting impartially as a juror (see *People v Provenzano,* 50 NY2d 420).

As to the second witness, Grummons, the circumstances are certainly more problematic. Moriah knew Grummons in Moriah's capacity as a probation officer and drug counselor. Moriah served as a manager of a county halfway house and residential advisor where Grummons resided. He knew Grummons, according to his characterization, "rather intimately". Exacerbating the situation is the fact that Grummons was a significant prosecution witness. He had been incarcerated in Tomkins County Jail concurrently with defendant. His trial testimony related to the crucial issue of the mental state of defendant, whose defense to the charge of murder was predicated on insanity. Grummons had testified that defendant told him that he intended to create an incident in the jail involving an attack on a prison guard so as to give credibility to his contention that he was insane.

At a hearing afforded a defendant on the question of whether a juror should have been disqualified, the defendant has the burden of proving the juror's disqualification. CPL 270.20 (subd 1, pars [b], [c]) enunciates the standards for determining disqualification. It provides, *inter alia,* that a prospective juror may be challenged for cause at the *voir dire* when "[h]e has a state of mind that is likely to preclude him from rendering an impartial verdict" or when "he bears some other relationship to [a witness] of such nature that it is likely to preclude him from rendering an impartial verdict".

The disclosures in this case of Moriah's knowledge of the two witnesses indicated a concern on the juror's part which needed to be explored by the trial court. The relationship between Moriah and Grummons indicates an "implied bias" because of the unique ties between them stemming from Moriah's duties as a probation officer and live-in manager of the rehabilitation facility and the fact that defendant resided there. The relationship is highly suspect. Under such delicate circumstances, a failure to inform counsel of the situation was clearly potentially detrimental to defendant.

At the hearing on the issue, County Court foreclosed any meaningful inquiry as to whether Moriah's knowledge of Grummons left him with a state of mind which would make it impossible for him to have served impartially on the jury.

Without more detail and elaboration on this issue, unanswered questions are left about the impartiality of Moriah. The reliance of the prosecution on the juror's expurgatory oath is not helpful. The record of the hearing fails, first of all, to show that any such oath was sought or made. Even if such oath had been made, under circumstances where a suspect relationship is made out, such oath does not dispel the problem (see *People v Branch,* 46 NY2d 645; *People v Meyer,* 78 AD2d 662). As the Court of Appeals stated in *People v Branch (supra,* p 652): "Nothing is more basic to the criminal process than the right of an accused to a trial by an impartial jury."

The matter should be remitted to County Court for an amplified hearing to address the issue of the state of mind of Moriah vis-à-vis Grummons as impacting on Moriah's ability to act impartially, with the other issues raised by defendant deferred pending such a hearing.