■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD TIMMONS, Appellant.—Judgment, Supreme Court, Bronx County (Fred W. Eggert, J., at *Wade* hearing, jury trial and sentence), rendered August 3, 1989, which convicted defendant of three counts of murder in the second degree and three counts of attempted murder in the second degree and sentenced him to indeterminate terms of from 25 years to life and 12-½ to 25 years, respectively, to run consecutively, unanimously reversed, on the law, the facts, and as a matter of discretion in the interest of justice, and the matter is remanded for a new trial.

Defendant's guilt of participation in a drug-related massacre/execution of three helpless victims was established by overwhelming evidence including the testimony of three severely wounded survivors, one of whom was a 13-year old girl. Despite the appalling character of these crimes, we are required to reverse by reason of clear indications of jury tampering which surfaced immediately post the verdict and fatally tainted it.

Defendant Timmons was tried together with two alleged accomplices, Kevin Clark and Henry Bolden. Only Clark took the stand in his own defense, and testified to an alibi: that at the time of the killings he was in the apartment of his

neighbor, Zavia Collins,[1] having intimate relations with her. Both resided in the same Bronx County multiple dwelling on the same floor.

The jury returned a guilty verdict with respect to defendant Timmons on June 8, 1989. Following this defendant told his lawyer of a conversation he had with his co-defendant, Clark in which Clark revealed that he had discussed the case with Juror No. 6, Jacqueline Crumm,[2] in a tripartite telephone conversation in which Collins had participated, and that an arrangement had been made for Crumm to vote to convict Timmons and Bolden in order to enhance her credibility in arguing for the acquittal of Clark.

Properly applying the guidelines laid down by the Court of Appeals in *People v Buford* (69 NY2d 290, 299), the trial court conducted a post-conviction hearing pursuant to CPL 330.30 (2) at which both Collins and Crumm testified. Based on what developed there we hold that the verdict must be vacated on the ground that, in the language of the statute, "during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict".

Collins testified that she had a 13-year relationship with Crumm, dating back to 1976. She first met Clark in 1987, when he moved into her apartment building with his wife and children. She visited him at Rikers Island two to three times before the trial began, and four to five times once the trial commenced.

When Crumm was selected as a juror she telephoned Collins with the news, who, unable to recall the date Crumm told her, then invoked her Fifth Amendment privilege against self-incrimination. She also invoked the privilege when asked if she had called the juror; if she had arranged a three-way conference call among the co-defendant, the juror, and herself; if she had spoken to Crumm about the verdict; if she had spoken to Crumm after the trial had started; and if she had told Clark that she was a friend of Crumm.

When her turn came, Crumm denied any misconduct in the discharge of her duties as a juror. Crumm testified that she first learned of Clark's relationship with Zavia Collins only

---

1. True names are used, since it appears that the post verdict hearing was open to and attended by representatives of the media.

2. *Ibid.*

after the trial. She also said that, during the trial, she did not recognize Collins' name when it cropped up in Clark's testimony (because she only knew Collins as "Ann"), the names of Collins' children (because she only knew their nicknames) or her address (because she did not visit her). She added that she did not speak with anyone—including Collins—about the trial and maintained that she did not know Kevin Clark.

These disclaimers by Crumm cannot be accepted at face value. From her actions in open court at a testimony read-back, as well as a concession by the Assistant District Attorney noted on the record who spoke to other jurors following discharge, it is clear that Crumm was the sole holdout for Clark. Crumm, conceding she had known Collins for 14 years and was a "close" friend at the end of this period, nonetheless claimed the inability to recognize Collins' last name or the names of any of her four children. This becomes incredible in light of Crumm's further testimony that Collins was married to Crumm's brother-in-law, and that Crumm considered Collins as the aunt of her own children. More to the point, she admitted that she spoke to Collins during the course of the trial. Her subsequent denial that during the conversation she never mentioned the trial itself, or anything to do with it, lacks credibility, particularly in light of her further testimony that she offered to go to lunch with Collins while still serving on the jury.

In *People v Branch* (46 NY2d 645, 652), reversing a murder conviction on the ground that a juror was to be regarded as biased as a matter of law, and therefore "grossly unqualified" to serve within the meaning of CPL 270.20 (1) (c), a unanimous Court of Appeals observed: "Nothing is more basic to the criminal process than the right of an accused to a trial by an impartial jury. The presumption of innocence, the prosecutor's heavy burden of proving guilt beyond a reasonable doubt, and the other protections afforded the accused at trial, are of little value unless those who are called to decide the defendant's guilt or innocence are free of bias."

The implied bias of the juror in *Branch (supra)* arose from the circumstance that he was a part-time village policeman who had previously worked with the prosecutor's office. In *People v Rentz* (67 NY2d 829) and in *People v Meyer* (78 AD2d 662) criminal convictions were reversed where jurors' relationships with trial witnesses were shown to have affected impartiality.

In the case at bar the impairment of Ms. Crumm as a disinterested and impartial juror is far graver than what

affected the jurors in the three above-cited cases. We need not draw the ultimate inference that the juror totally disregarded her oath to render a fair and impartial verdict, based solely on the evidence, in favor of a corrupt commitment to try to manipulate the jury to carry out a sordid bargain. If such were the case, the fact that the conspiracy failed of its purpose—the acquittal of Clark—would do nothing to restore the integrity of the verdict against Timmons. What we do conclude is that the admitted interaction of the juror with a potential alibi witness for Clark, during the course of the trial itself, irreparably taints this verdict and requires a new trial.

. In light of the foregoing, it is unnecessary to consider the other issues raised by defendant, including the relief of a remand to reopen the post conviction hearing so as to permit full cross-examination of the juror, inasmuch as that aspect of the appeal is now rendered moot. Concur—Murphy, P. J., Carro, Wallach and Rubin, JJ.

