Titone, J.
(dissenting). I dissent from the majority’s decision to affirm because, in my view, its conclusion that defendant was not prejudiced by a juror’s conversation with a potential alibi witness is simply insupportable.
Because the majority has not referred to the underlying facts in its terse memorandum opinion, a brief review of the events that took place both during and after defendant’s trial is necessary. Defendant, who was jointly tried with his two codefendants Ronald Timmons and Henry Bolden, built his defense on an alibi claim, specifically asserting under oath that on the night of the murder he went to the apartment of his neighbor, Zavia Collins, where he spent the night and had intimate relations with her for the first and only time. Ms. Collins, however, did not testify at the trial.
After the jury returned guilty verdicts against all three defendants, the defendants each moved to set aside the verdict under CPL 330.30 (2) on the ground that one of the jurors, Jacqueline Crumm, had been in touch with Ms. Collins during the trial. Defense counsel’s affirmation in support of the motion described a conversation between himself and Collins in which Collins stated that "she had in fact discussed with Ms. Crum[m] the possibility of her testifying in Mr. Clark’s behalf,” but that she had not discussed with Crumm what her testimony would be. Additionally, Collins herself submitted an affidavit in which she stated that she had known Crumm since 1976, that Crumm’s brother-in-law was her children’s father and that she and Crumm visited each other periodically and communicated by phone several times a week. Finally, Collins stated in her affidavit that she mentioned to Crumm that she had been asked to testify as a witness for defendant and that Crumm had responded by telling her "to follow [her] heart.”
On the basis of these allegations, the court held a postver *916 diet hearing at which Collins and Crumm testified. Collins reiterated her description of the close and longstanding personal relationship she had had with Crumm. She also stated that Crumm had told her about being a juror in defendant’s case, although she had never discussed her plans for deliberating or voting with Collins. In contrast to Collins’ testimony, Crumm denied having discussed the trial with Collins and asserted that she had learned of Collins’ relationship to defendant only after the trial had ended. Crumm stated that she had not recognized the name of her long-term friend, Zavia Collins, when it was raised at trial because she knew her as "Ann” Collins. The only other significant information came from the Assistant District Attorney, who asserted that his postdischarge interviews with the other jurors indicated that, before she finally capitulated and voted to convict, Crumm had* been the sole holdout for defendant.
The trial court denied the motions by all three defendants to set aside the verdict. On appeal, however, the Appellate Division reversed the judgments of conviction against codefendants Timmons (175 AD2d 10, lv dismissed 78 NY2d 975) and Bolden (175 AD2d 21, lv dismissed 78 NY2d 962). Crediting the testimony offered by Collins and discrediting the testimony of Jacqueline Crumm, the court concluded that the communications between Collins, a potential alibi witness for defendant, and Crumm, a juror, irreparably tainted the verdicts against Timmons and Bolden, who had both interposed a defense of mistaken identity. In contrast, the judgment against defendant, whose alibi defense was involved in the postverdict dispute, was left standing (178 AD2d 303). In support of its decision to deny defendant appellate relief, the Court stated, inter alia, that nothing in the record suggested that the juror’s bias worked to prejudice defendant.
A majority of this Court now echoes that view, stressing that, according to the Appellate Division, "it [was] clear that [Crumm] was the sole holdout” for defendant during the jury’s deliberations (see, People v Timmons, supra, at 12). Based on this purported "fact,” the majority infers that this defendant has no cause for complaint because he "was, if anything, aided by whatever misconduct took place.” This facile conclusion, however, is simply insupportable.
Initially, the majority’s conclusion is objectionable because it is based solely on unsworn hearsay allegations of the prosecutor about what he had been told by the other jurors at defendant’s trial. Such allegations obviously have no eviden *917 tiary value and cannot fairly be used as a predicate for drawing legal inferences, particularly in a case where a testimonial hearing has been held. Even if the "fact” asserted by the prosecutor had been established in a procedurally acceptable way, however, the majority’s inference could not logically be defended.
The fact that Crumm may have been the "sole holdout” for defendant at some point in the deliberations does not detract from the conclusion that defendant was substantially prejudiced by Crumm’s misconduct (see, CPL 330.30 [2]). While Crumm may have initially been favorably disposed toward defendant, she ultimately acceded and became 1 of the 12 jurors who unanimously voted to convict. Manifestly, her vote to convict could not have been solely the product of reasoning based on the trial evidence, since her private knowledge of Collins’ decision not to testify in support of defendant’s alibi was an unavoidable component of her mental state.
The key to defendant’s case was Zavia Collins and, more specifically, the credibility of defendant’s claim that Zavia Collins would have verified his alibi if she had been called to testify. In this context, nothing could have been more devastating to a juror’s ability to objectively analyze the evidence than that juror’s personal knowledge that this alibi witness had been asked by the defense to testify and, after searching her conscience, had declined. Yet, this is precisely what Crumm knew.
Crumm had actual personal knowledge that the very person who defendant said could exonerate him was unwilling to give testimony on his behalf, not because she was ill, unavailable or unaware of the proceeding, but rather because something in her "heart” told her not to testify.* A juror with such knowledge could not, by any stretch of the imagination, be considered "impartial.” To the contrary, the notion that this *918 juror could fairly evaluate defendant’s alibi based only on the trial evidence and could render an unbiased verdict is so preposterous as to be unworthy of serious consideration.
Indeed, the only inference that can be drawn from these facts is that Crumm had personal knowledge that made it impossible for her to consider the evidence in an impartial and unbiased manner. Accordingly, Crumm possessed a "state of mind” that would necessarily prevent her from rendering an impartial verdict (see, People v Buford, 69 NY2d 290, 298). She was therefore guilty of misconduct within the meaning of CPL 330.30 (2), and her contribution to the unanimous guilty verdict must be regarded as tainted.
Had a juror been exposed to an outside newspaper story indicating that the defense’s alibi witness had been asked— and had refused — to testify for the defendant, few would doubt that the conviction would have to be overturned. Since, what occurred in this case is, in principle, identical, the same result should ensue. Accordingly, I dissent from the majority’s conclusion and vote to reverse defendant’s conviction.
Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa and Smith concur; Judge Titone dissents and votes to reverse in an opinion.
Order affirmed in a memorandum.

 The majority’s assertion that the record does not support this proposition (majority mem, at 915, n) is belied by Collins’ affidavit, which clearly states that Collins herself told Crumm that she had been asked to testify for defendant and that when she "asked [Crumm] for her opinion[, Crumm’s] response * * * was 'for [Collins] to follow her heart.’ ” It seems logical to assume that when Collins did not appear to testify, Crumm attributed her absence to a decision she made after searching "her heart.” In any event, the facts that Crumm, a juror, had a personal relationship with Collins, the person whom she knew was defendant’s potential alibi witness and that she had, in fact, discussed the possibility of Collins testifying with Collins are alone sufficient to disqualify her as the kind of impartial and objective juror that defendant was entitled to have.