OPINION OF THE COURT
Wachtler, J.
After a joint jury trial defendants Vernon and Vraden Branch were convicted of murder in the second degree (Penal Law, § 125.25, subd 3) and robbery in the first degree (Penal Law, § 160.15). On appeal to the Appellate Division both defendants argued, among other things, that the trial court erred, as a matter of law, in denying their challenge for cause to excuse a venireman from the jury. The Appellate Division held that the denial of the challenge for cause constituted reversible error under CPL 270.20 (subd 1, par [c]), reversed the judgments of conviction and remanded for a new trial. This case presents a novel question of statutory interpretation.
During the course of the jury selection process after the defendants had exhausted their peremptory challenges, James Scott was called to the jury box. Extensive questioning of Scott revealed that he had been serving as a part-time police officer in Poestenkill, a town in Rensselaer County, for three years. In his capacity as a police officer Scott had worked in conjunction with the Rensselaer County District Attorney’s office, and in some cases particularly closely with the State’s trial attorney in the present case. It was further disclosed that the two had developed a personal relationship, on occasion having socialized together.
After eliciting this testimony from Scott, the court asked him a series of questions designed to determine if he could serve as an impartial juror. In response Scott stated that neither his work as a police officer nor his relationship with the prosecutor would influence his verdict, and that he could render an impartial verdict according to the evidence. Based on these assurances, the court denied defendants’ challenge for cause, and seated Scott as a juror.
The issue is whether the court erred, as a matter of law, in allowing Scott to participate as a juror. We hold that Scott’s professional and personal relationship with the People’s trial attorney rendered him unsuitable for jury service in this case within the meaning of CPL 270.20 (subd 1, par [c]). We further hold the expurgatory oath unavailable where this statutory provision disqualifies a juror.
*650 To determine the meaning of CPL 270.20 (subd 1, par [c]), it is instructive to review the relevant law prior to its enactment. Before the adoption of the Criminal Procedure Law, the rules governing challenges for cause were prescribed by section 376 of the Code of Criminal Procedure which provided for the automatic disqualification of prospective jurors for "implied bias”. Among the eight enumerated categories of implied bias were having a relationship of consanguinity or affinity within the ninth degree to the defendant, victim, or complainant (Code Crim Pro, § 377, subd 1), being an adverse party to the defendant in a civil action (Code Crim Pro, § 377, subd 3), and being a complainant against or having been accused by the defendant in another criminal case (Code Crim Pro, § 377, subd 3). An expurgatory oath was not available where implied bias was shown.
A juror could also be challenged for cause under the old law for "actual bias”, defined as "the existence of a state of mind on the part of the juror” as to the guilt or innocence of the defendant. Such a state of mind would not disqualify the juror if he declared on oath to the satisfaction of the court that his opinions would not influence his verdict, and that he could render an impartial verdict according to the evidence. (Code Crim Pro, § 377, subd 2; People v Biondo, 41 NY2d 483; People v Wilmarth, 156 NY 566, 569.)
The new statute, which is controlling here, is similar in many respects to the old one. Although the term "implied bias” has been abandoned, the concept underlying the term has survived. Thus a challenge for cause may be made on the ground that the juror "is related within the sixth degree of consanguinity or affinity to the defendant, or to the person allegedly injured by the crime charged, or to a prospective witness at the trial, or to counsel for the people or for the defendant; or that he is or was a party adverse to any such person in a civil action; or that he has complained against or been accused by any such person in a criminal action” (CPL 270.20, subd 1, par [c]). The new law, however, has included one additional ground for disqualifying a prospective juror. A venireman may not serve if "he bears some other relationship to any such person [e.g., the defendant or either counsel] of such nature that it is likely to preclude him from rendering an impartial verdict” (CPL 270.20, subd 1, par [c]).
First it must be noted that Scott’s professional and personal relationship to the prosecutor in this case places him squarely *651 within the above provision. As a part-time police officer in Poestenkill during the past three years he had had direct contact with the Rensselaer County District Attorney’s office, and had worked directly with the prosecutor. In addition his professional contact with him grew into a personal relationship so that on occasion they had socialized together. These facts establish, as a matter of law, that the nature of this relationship was "likely to preclude [Scott] from rendering an impartial verdict” (CPL 270.20, subd 1, par [c]).
The People argue nevertheless that in view of Scott’s expurgatory declarations the court was within its discretion in allowing him to serve as a juror. We disagree.
As stated, under the old law an expurgatory oath was not available where "implied bias” was shown. The reason for this rule was that the risk of prejudice arising out of the close relationship between the prospective juror and one of the key participants in the trial was so great that recital of an oath of impartiality could not convincingly dispel the taint. In enacting CPL 270.20 (subd 1, par [c]) the Legislature broadened the list of suspect relationships to exclude from jury service those persons who bear "some other relationship * * * likely to preclude [them] from rendering an impartial verdict”. To be sure such individuals are equally unfit to sit as jurors as are those who fall within the other prohibited categories. The expurgatory oath was never applied where any of the other suspect relationships were involved, and there is no indication whatsoever that the Legislature intended to diverge from this principle here (see People v Culhane, 33 NY2d 90, 104, n 2).
By contrast, CPL 270.20 (subd 1, par [b]) allows a challenge for cause where a prospective juror "has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at trial”. This provision is analogous to subdivision 1 of section 376 of the Code of Criminal Procedure which similarly allowed a challenge for cause for a prejudicial "state of mind on the part of the juror” as to the guilt or innocence of the defendant. It is here, rather than in the case of a suspect relationship, that the expurgatory oath is available (People v Biondo, 41 NY2d 483, supra; People v Genovese, 10 NY2d 478).
We would add that the trial court should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror to serve. It is precisely for this reason that so *652 many veniremen are made available for jury service. Nothing is more basic to the criminal process than the right of an accused to a trial by an impartial jury. The presumption of innocence, the prosecutor’s heavy burden of proving guilt beyond a reasonable doubt, and the other protections afforded the accused at trial, are of little value unless those who are called to decide the defendant’s guilt or innocence are free of bias.
Accordingly, the orders of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Fuchsberg concur with Judge Wachtler.
Orders affirmed.