■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES L. BOYD, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered February 14, 1978, convicting him of assault in the second degree and assault in the third degree, upon a jury verdict and imposing sentence. Judgment affirmed. On June 8, 1977 the defendant's wife, Hilda Boyd, and his stepdaughter, Tanya, then 14 years of age, were driving from their home to the latter's girlfriend's house. While stopped for a red signal light, at approximately 4:00 P.M., Tanya observed the defendant running toward the car. When he reached it, he threw a brown paper bag containing lye into the partly opened window. The liquid struck Hilda Boyd on her face, head, chest and shoulder. Some of the lye came in contact with Tanya's hands, legs and chin. When they fled to a nearby bar and grill for aid, the defendant pursued them, knocked his wife to the ground and beat her. With the aid of the barmaid they were able to escape and went to a garage where they were able to wash their skin with water, and from which place they were removed to a hospital for medical care. According to the hospital physician who treated Hilda Boyd it was his diagnosis that as a result of the caustic effect of the lye she received first and second degree breast burns, which resulted in disfiguring scars below her right breast. Tanya testified that when the lye struck her she sensed a stinging sensation, her skin turned red, and it caused her some pain. When she was treated in the hospital emergency room the treating physician found redness on her left knee which he diagnosed as a superficial burn. The defendant contends that at the outset of the jury *voir dire,* a ruling by the trial court violated his constitutional rights under the Fifth and Fourteenth Amendments by forcing him to make a premature decision as to whether he would testify in his own defense. During the initial stage of the jury selection process, the court sought to disclose to the prospective jurors the names of the witnesses in the case in order to be assured that none were known to the members of the panel. After the prosecutor had complied with the court's request, and before calling upon the defense counsel, the court instructed the panel: "Now before I call on the defense attorney there is a second rule of substantive law that I must explain. The defendant, as he sits here, is presumed innocent. This is the very foundation of our law and this presumption stays with him throughout the trial and until you go into the jury room at the end of the trial when you have to decide the case. And this presumption stays with the defendant until if you ever reach the point during your deliberations and decide that he is guilty and guilty beyond a reasonable doubt. Until that point he is presumed to be innocent. Now what does that mean? It means that he doesn't have to call any witnesses and he doesn't have to testify. The government made the charge; the government under our system is expected to prove it. Therefore, the defendant doesn't have to call any witnesses. He doesn't have to testify. However, I'm sure you can all see what a waste of time it would be if we got into the middle of the trial and the defendant called a witness everybody on the jury knew that witness. It doesn't happen often here but in small communities it often happens. We have to find out at the very start who the witnesses are going

to be. Bearing that caveat in mind, first of all will you introduce yourself and your client?" Defense counsel, however, opposed the court's instruction on the ground that he was not obligated to disclose the names of any witnesses, and stated that he did not know whom he would call. The court disagreed and stated, out of the hearing of the jury: "I am directing you to tell this prospective panel the names of the prospective witnesses that you may call. I have already advised them you don't have to call anyone and if you prefer you can express it that way. The decision will be yours alone if you want to call witnesses after you have heard the People's case, you may or may not but that if you do, these are the witnesses that will be called". Counsel then identified himself and the defendant to the jury and added: "It is our present intention to call the defendant in this action and Robin (Robert) Stephenson from Hempstead". The clear import of the court's instruction requiring counsel for both sides to reveal to the prospective jurors the identity of their respective witnesses to be called at the trial was to bring to the forefront, at the very beginning, the existence of any relationship between a prospective juror and a witness, which, if undetected at the time of jury selection, could prevent a fair trial. This would have permitted counsel, at that early stage of the case, to offer a challenge for cause and to obtain the exclusion of such prospective juror where such relationship exists. (See CPL 270.20, subd 1, par [c]; *People v Branch,* 46 NY2d 645; *People v Ellis,* 54 AD2d 1052.) With respect to the suggested procedure to be utilized by a Trial Judge, the pattern Rules of Court and Code Provisions, based upon the American Bar Association Project Standards for Criminal Justice, Trial by Jury, provides in part, in section 2.4: "A voir dire examination shall be conducted for the purpose of discoverying bases for challenge for cause and for the purpose of gaining knowledge to enable an intelligent exercise of peremptory challenges. The judge should initiate the voir dire examination by identifying the parties and their respective counsel and by briefly outlining the nature of the case. The judge shall then ask the prospective jurors any questions which he thinks necessary, touching their qualifications to serve as jurors in the cause on trial". (Accord, Standards Relating to the Function of the Trial Judge, § 5.1.) When the Trial Judge addressed defendant's counsel and asked him to "introduce yourself and your client," the existence of any personal or other relationship between them and the jury would have immediately been uncovered. The further request for the identity of any defense witnesses related to persons then unknown to the jury panel who might thereafter have testified as witnesses. The court's request was not intended to include the defendant who had already been introduced and was known to the prospective jurors. The confusion which resulted in the revelation that the defendant would testify for the defense was created by the defendant's attorney, when he, although clearly advised of the purpose of disclosing the names of witnesses, nevertheless, volunteered the defendant's intention to take the witness stand. Consonant with the purpose of CPL 60.15 (subd 2) and 300.10, it was held in *People v Rodriguez* (38 NY2d 95, 98) that "Ordinarily, a court may not comment upon a defendant's failure to testify or otherwise to come forward with evidence". The court's several comments to the jury that the defendant "doesn't have to testify" constituted a premature and impermissible intrusion upon the defendant's exclusive right under CPL 300.10 to request the court to instruct the jury that no inference unfavorable to the defendant should be drawn in the event he elects not to testify. The manifest purpose of this statute is that unless such request is made by the defendant, such instruction must not be given. There is, however, no

inherent violation of the defendant's right against self incrimination by calling upon him to reveal, with appropriate precautions, the names of the prospective witnesses he may call to testify. In *People v Damon* (24 NY2d 256, 261) it was held that such right was not infringed by requiring the defendant to submit statements by his witnesses. The court there held: "These statements were not those of the defendant but of witnesses offered by the defendant. In no sense can it be said that he is being compelled to produce incriminating statements of his own. The privilege against self incrimination applies only to evidence of a testimonial or communicative nature obtained from the defendant himself *(Schmerber v. California,* 384 U.S. 757, 761; see, also, *Jones v. Superior Ct.,* 58 Cal.2d 56; Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L. Rev. 228, 246 n.; Note, 76 Harv. L. Rev. 838)." The impropriety of the procedure utilized here could have been avoided had the court, to safeguard the defendant's rights, requested the names of prospective witnesses outside the presence of the jury for later presentation to the jury without attribution to either party. In view of the overwhelming evidence of the defendant's guilt, there is no reasonable possibility that the error might have contributed to defendant's conviction, and we find that it was harmless beyond a reasonable doubt (see *People v Perez,* 61 AD2d 817). We have examined the other contentions of the defendant and find them to be without merit. Mangano, J. P., Gibbons and Gulotta, JJ., concur.

Cohalan, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: During the selection of the jury the Trial Judge made the following remarks, *inter alia,* to the veniremen and to the opposing attorneys: "The defendant, as he sits here, is presumed innocent. Now what does that mean? It means that he doesn't have to call any witnesses and he doesn't have to testify. The government made the charge; the government under our system is expected to prove it. Therefore, the defendant doesn't have to call any witnesses. He doesn't have to testify. However, I'm sure you can all see what a waste of time it would be if we got into the middle of the trial and the defendant called a witness everybody on the jury knew that witness. It doesn't happen often here but in small communities it often happens. We have to find out at the very start who the witnesses are going to be. Bearing that caveat in mind, first of all will you introduce yourself and your client? At that point defense counsel asked for a sidebar conference. [The following occurred on the record at the bench]: MR. REDDAN [defendant's attorney]: Your Honor, I don't know who I am going to call as a witness. I don't have an obligation to reveal their names and I would rather not. THE COURT: It is not fair to have one side do it and I have to expect the other side to do it. And the reason, as I have explained to the jury—MR. REDDAN: That's true but I have no obligation to disclose. THE COURT: I disagree. I am directing you to tell this prospective panel the names of the prospective witnesses that you may call. I have already advised them you don't have to call anyone and if you prefer you can express it that way. The decision will be yours alone if you want to call witnesses after you have heard the People's case, you may or may not but that if you do, these are the witnesses that will be called. MR REDDAN: I take exception. THE COURT: Yes, of course. (After the benchside conference the following occurred in open Court.) MR. REDDAN: My name is John Reddan. I am the attorney for the defendant. The defendant is James Boyd. Will you turn around? (Whereupon the defendant turned around). MR. REDDAN: It is our present intention to call the defendant in this action and Robin Stephenson from Hempstead. THE DEFENDANT: Robert. MR. REDDAN: Robert

Stephenson from Hempstead and the defendant. THE COURT: Ladies and gentlemen, I repeat, the defendant doesn't have to call any witnesses and the People have to prove his guilt beyond a reasonable doubt and he is presumed to be innocent and that I would remind you that the People don't have to call the witnesses that they mention just that they will call either some or all of them as they decide. It has nothing to do with their responsibility if they mention some names and they later don't call them and needless to say, the same applies to the defense." Until September 1, 1971 the criminal courts operated under the Code of Criminal Procedure. Under section 393 of that code (entitled "Defendant as witness") it was proclaimed that: "The defendant in all cases may testify as a witness in his own behalf, but his neglect or refusal to testify, does not create any presumption against him." It was customary procedure under section 393 of the Code of Criminal Procedure for the Trial Judge to charge the statute, namely that the defendant's "neglect or refusal to testify, does not create any presumption against him," or, in other words, that the jury may draw no unfavorable inference because of the defendant's failure to take the stand. CPL 60.15 (subd 2) reads (eff Sept. 1, 1971): "A defendant may testify in his own behalf, but his failure to do so is not a factor from which any inference unfavorable to him may be drawn." CPL 60.15 is fleshed out in CPL 300.10 (entitled "Court's charge; in general"). Subdivision 2 of that statute reads, in part: "Upon request of a defendant who did not testify in his own behalf, but not otherwise, the court must state that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn". Despite what defense counsel said about his "present intention" to call the defendant to the stand, the trial proceeded to a conclusion without the defendant's testimony. I think the action of the Trial Judge placed the defendant in an untenable position. When he did not take the stand—despite all of the court's statements that he was not obliged to—it must have been difficult for the jury not to infer that he had something to hide—and particularly something that may have come up in the course of the trial. The drastic change in the Criminal Procedure Law from the Code of Criminal Procedure, with respect to the court's requirement to charge as to a defendant's failure to testify, was made for the benefit of a defendant. While under the Code of Criminal Procedure the Trial Judge charged the statute, now, under the Criminal Procedure Law, he may not give such a charge except at the request of the defendant. In the instant case the court defeated the purpose of the change in the statute to the defendant's detriment. The court's remark that it would be a waste of time if "the defendant called a witness everybody on the jury knew" was inappropriate. He added that "It doesn't happen often here [Nassau County] but in small communities it often happens." He apparently had in mind the case of *People v Branch* (46 NY2d 645). There, a prospective juror, who was a part-time policeman, stated that he knew the People's trial attorney professionally and personally. Nevertheless the court, over objection, permitted him to serve. At this point defendant's peremptory challenges had been exhausted and his challenge for cause was denied. The small community was Poestenkill which in 1970 had a population of 3,426 souls. Poestenkill is in Rensselaer County, which in turn contained 152,510 people (1970 decennial census). As against those figures, Nassau County, in 1970, had a population of 1,428,838 persons and could scarcely qualify as a small community. *Brooks v Tennessee* (406 US 605, 606) supports the defendant's position. Tennessee had a statutory requirement that a defendant in a criminal proceeding " 'desiring to testify shall do so before any other testi-

money for the defense is heard by the court trying the case.' " The Supreme Court struck down the statute as violative of the defendant's privilege against self incrimination. It held that a defendant may not be penalized for remaining silent at the close of the State's case by being excluded from the stand later in the trial. I would hold, by parity of reasoning, that the defendant at bar should not have been compelled to divulge his defense strategy until the People's case was concluded.