OPINION OF THE COURT
Lewis L. Douglass, J.
The question to be decided is whether Arnold D. Hechtman, author of the Practice Commentaries in McKinney’s Penal Law, and now retired from professional life, is, because of that authorship, ineligible to serve as a criminal trial juror.
The issue arose when Mr. Hechtman was routinely called to jury duty in Kings County and was sent along with 50 other prospective jurors to a Criminal Part where a voir dire was under way in a murder prosecution. As those prospective jurors entered the courtroom, the court, consistent with its usual procedure, advised the prospective jurors of the nature of the case, told them that both the court and the lawyers were looking for 12 people who could use their common sense in deciding whether witnesses are truthful, and jurors who could decide the case on the evidence and not on any preconceived notions.
Approximately 6 to 8 jurors approached the Bench and, in the presence of the defense attorney and the Assistant District Attorney, offered various reasons why they could not serve. Some were legitimate and others were obviously excuses to get *390 out of jury duty. All of those persons were excused with the concurrence of the lawyers and told to return to the Central Jury Part where jurors are assembled before being sent to individual trial parts.
The clerk of the court then randomly drew 14 names, and those persons took seats in the jury box. They were then interrogated by the court as to whether they had relatives in law enforcement, been victims of a crime, had negative experiences with the police, and were urged to bring to the court’s attention, either from their seat or by approaching the Bench, circumstances which they felt might affect their ability to be fair. The court then reviewed' the applicable principles of law and each juror responded to a questionnaire indicating his age, section of the city in which he or she lived, prior jury duty, if any, and finally each responded “yes” to the question, “Can you be fair?”. The answers were uneventful. No one was disqualified. Following examination of the panel by the District Attorney, the defense attorney then began his voir dire and one juror indicated that he was a retired general counsel to the State Division of Criminal Justice Services. The defense attorney then asked that juror if he was the author of McKinney’s Commentaries. It was at this point that the lawyers and the court first became aware of that juror’s unique background. None of the jurors indicated any special reaction when Mr. Hechtman’s background was disclosed.
Since Mr. Hechtman’s background suggested the need for further inquiry about his impartiality, and since that inquiry in the presence of the other prospective jurors might influence their impartiality, the court conducted a further voir dire of Mr. Hechtman in the presence of the attorneys, but out of the presence of the other prospective jurors. During that voir dire the court indicated to Mr. Hechtman that it was very possible that his understanding of the law was more precise than this court and asked him if the court described the state of the law in a manner different from Mr. Hechtman, would he follow the law as given by the court. He said he would.
During the public voir dire, Mr. Hechtman, in response to a question about whether he could accept the possibility that an identifying witness could make a mistake, said, “My mind is open to all possibilities.” He again in the voir dire, held out of the hearing of the other prospective jurors, assured the lawyers and the court that he would be fair and he said he did not believe the fact that he had written on the law would cause him to be other than impartial. From that exchange and how Mr. Hechtman answered the questions, the way in which he distinguished *391 between the scholarly functions of analyzing statutes in connection with his writings and the role of a trial juror, this court was convinced that Mr. Hechtman was wholly impartial. He was excused and returned to join the other prospective jurors. The defense then challenged Mr. Hechtman for cause. The challenge was denied.
There are two forms of bias which require that a prospective juror be excused. First is actual “actual bias.” This occurs when a prospective juror acknowledges some specific bias or an inability to set aside a specifically held attitude which would prevent him from basing his verdict on the evidence, or has a relationship with one of the trial participants. Second is “implied bias.” This is inferred from some special circumstances and exists even though the juror may, by his oath, declare that he will be unbiased and fair (People v Branch, 46 NY2d 645). Thus, for example, a juror who indicates hostility toward minorities, but asserts he would set that hostility aside, should nevertheless be excused on the grounds of “implied bias,” notwithstanding the juror’s disclaimer (People v Blyden, 55 NY2d 73). In this case nothing suggested “actual bias.” The question thus becomes whether the mere fact that Mr. Hechtman was the author of the Commentaries must ipso facto mandate a finding of “implied bias.”
It is well established that “The qualifications of a juror do not depend in any degree upon his knowledge or want of knowledge of the law of evidence as applicable to criminal trials. These [are] matters of law which [a] juror [is] bound to take from the court. A juror cannot be a law unto himself, but is bound to follow the instructions of the court in that respect, and hence his knowledge or ignorance concerning questions of law is not a proper subject of inquiry upon the trial of the challenge for cause” (People v Conklin, 175 NY 333, 339-340).
And that view has been reinforced in People v Boulware (29 NY2d 135, 141), where the court said, “The reason for this rule is clear. The role of the jury is limited to the resolution of factual issues.”*
The defendant points to the language in People v Blyden (supra, at p 78), where the court said: “As this court stated in People v Branch [supra], ‘the trial court should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror *392 to serve. It is precisely for this reason that so many veniremen are made available for jury service.’ Even if, through such caution, the court errs and removes an impartial juror, ‘the worst the court will have done * * * is to replace one impartial with another impartial juror’ ”.
Clearly, if the information which was revealed in the voir dire disclosed any facts which might have raised the possibility of “actual bias,” Mr. Hechtman should have been excused. But here there is no “actual bias,” that is, bias because of his relationship to any trial participant or because he held some attitude which would have prevented him from basing his verdict on the evidence. The only ground to find partiality would have been on the assumption of “implied bias” because of his authorship of the Commentaries.
There is more at stake here than merely exclusion of one juror to be replaced “with another impartial juror”. When a juror is excluded because of some special facts or circumstances, he may well serve on another jury. But if bias is to be implied merely because of the juror’s profession, that leads to the conclusion that whole categories of citizens are to be excluded from participation in one of our society’s most important functions. Thus where possibility of bias is not “actual,” but “implied,” our courts have rejected the policy of erring in favor of disqualification.
The court said: “It is almost always wise for a trial court to err on the side of disqualification except in cases where disqualifying a certain class of jurors on status grounds (i.e., implied bias) would ipso facto result in creating a strong jury bias in the other direction” (People v Culhane, 33 NY2d 90, 108, n 3).
The idea that groups of citizens should be automatically excluded from jury participation is clearly repugnant to our democratic system. “The American tradition of trial by jury, considered in * * * either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community” (Thiel v Southern Pacific Co., 328 US 217, 220; also see Glasser v United States, 315 US 60).
If Mr. Hechtman is to be excluded because of his scholarship, the same reasoning would exclude law professors and nonlawyers who are scholars or researchers in various aspects of criminal justice or, indeed, any citizen who admits to being well read in the law. Public policy suggests that no justice system should be designed to systematically exclude from participation an entire class of the society’s best informed citizens.
*393 The defendant further argues that “implied bias” should be found because if Mr. Hechtman’s background became known, his reputation would so overwhelm the other jurors that his views would disproportionately dominate the deliberations and thus cause those jurors to abandon their own views and support Mr. Hechtman’s views.
To accept that argument would suggest that a professor of psychiatry, a president of a college, a president of a large company, or any citizen who had achieved success is to be excluded merely because there is the possibility that his views would overwhelm other jurors because they have not achieved the same level of success.
Not only does public policy suggest that no system based on reason should be designed to deliberately exclude the society’s most informed citizens, but beyond that, our Constitution requires that juries be selected so that all of our citizens (except where actual bias is shown) be given the opportunity to participate in the process. Although contained in a dissent (where the court agreed that exclusion of an entire class was improper but divided on whether the particular facts established exclusion) the following often-cited language of Mr. Justice Murphy clearly captures the essence of the American jury: “There is no constitutional right to a jury drawn from a group of uneducated and unintelligent persons. Nor is there any right to a jury chosen solely from those at the lower end of the economic and social scale. But there is a constitutional right to a jury drawn from a group which represents a cross-section of the community. And a cross-section of the community includes persons with varying degrees of training and intelligence and with varying economic and social positions. Under our Constitution, the jury is not to be made the representative of the most intelligent, the most wealthy or the most successful, nor of the least intelligent, the least wealthy or the least successful. It is a democratic institution, representative of all qualified classes of people” (Fay v New York, 332 US 261, 299-300).
It is therefore abundantly clear that there is no reason in law to exclude Mr. Hechtman’s participation, recognizing, of course, the defendant’s right to use one of his 20 peremptory challenges.

 It is also noted that practicing lawyers are not ineligible from sitting as trial jurors but are merely entitled to claim an exemption if they so choose (Judiciary Law, § 512).