■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLINTON DANIELS, Appellant. [630 NYS2d 751] —Judgment, Supreme Court, New York County (Nicholas Figueroa, J.), rendered November 16, 1990, convicting defendant, after a jury trial, of robbery in the first degree, robbery in the second degree, and attempted robbery in the first degree, and sentencing him to three concurrent terms of 3 to 9 years, reversed, on the law, the facts and as a matter of discretion, and the matter remanded for a new trial.

The defendant appeals a conviction for robbery. At his trial, only one of the several alleged witnesses to the robbery, the complainant Rafael Yslaguez, was able to identify defendant as one of the four individuals responsible for the crime's commission. The reliability of Yslaguez's identification was, accordingly, the principal issue before the jury.

During his testimony, Yslaguez disclosed in passing that he was a tailor by profession and a graduate of the Fashion Institute of Technology (FIT). When his direct and cross-examination had concluded, one of the jurors found it appropriate to bring the following to the court's attention: "From 1979 to 1987 my wife was the top illustration model at FIT and I was studying photography and I did a bit of modeling also. Frankly, I don't know [Mr. Yslaguez]. I've never seen him before. Then I got home and realized I know all of his teachers. I'm sure I know friends of his. I know his situation. I know what he's about. I know what hasn't been brought out, that being a trained artist he would be able to identify a face". Although the juror initially indicated that his "knowledge" of Yslaguez's "situation" and observational capabilities would "come into play" in his deliberations, he later, in response to

---

the trial court's request for reassurance as to his impartiality, gave routine expurgative declarations to the effect that he would base his verdict solely upon the evidence in the case. Apparently satisfied with these assurances, the trial court denied the defendant's motion to disqualify the juror and replace him with one of the three alternates then available for service.

While a trial court is accorded wide discretion in determining whether a seated juror should be disqualified pursuant to CPL 270.35 (*People v Rodriguez*, 71 NY2d 214, 219; *People v Michael*, 48 NY 1, 10), that discretion is not unbounded, and when it becomes evident that a juror either by reason of implied or insufficiently purged actual bias is unable to render a fair and impartial verdict the juror should be discharged (*see, People v Rentz*, 67 NY2d 829; *People v Meyer*, 78 AD2d 662). Although this is not a classic case of implied bias and the juror's expression of actual bias in favor of the complainant was to some extent purged, the case nevertheless presents a unique combination of predisposing non-evidentiary influences raising the most serious doubts as to the subject juror's capacity for impartial judgment.

It is notable first of all that the juror himself was aware that his impartiality was called into question by the professional, academic and social background he shared with the complaining witness, and undoubtedly it was because of that awareness, rather than, as the People suggest, simply to share the revealed areas of coincidence, that the juror commendably brought what he had come to view as a conflict-ridden situation to the trial court's attention. As is evident from his statement, the juror, upon reflection, realized that he identified rather strongly with complainant. Having completed a course of study in the visual arts at the same institution attended by complainant and in the course thereof having come to know all of complainant's teachers and some of his friends, and thereafter having pursued a career in a related field, the juror felt, perhaps justifiably, that he knew complainant's "situation", that he knew what complainant was "about". This degree of acknowledged identification between a juror and a complaining witness would itself be disquieting, but the juror here went further. He stated that knowing all he did about complainant's background and training, he knew "what ha[d]n't been brought out" namely that complainant as specially gifted at remembering people's faces. Here then was a juror frankly disclosing not only a web of common associations evidently resulting in a strong inclination to identify, presumably sympathetically,

with the complaining witness, but a specific disposition to credit the witness's crucial testimony identifying the defendant as one of those who had robbed him. And, lest it be thought that this disposition or, more accurately, predisposition, was permissibly rooted in the proof, the juror was explicit that it was based not on evidence in the case but rather upon "what ha[d]n't been brought out" and what the juror only knew or thought he knew from his own personal, extra-judicial experience. This specific admission of actual bias affecting the juror's judgment upon the central issue in the case, in combination with the juror's more general sense of affinity with the complaining witness whose studies, career and acquaintances he viewed as coinciding closely with his own, presented a situation in which the outer limits of a court's discretion to retain a juror over the defendant's objection ought not to have been tested. In this context, the very real doubts raised and indeed volunteered by the juror himself about his capacity for impartiality should have been resolved by replacing the juror with one of the available alternates in accordance with the defendant's request. As was observed in *People v Branch* (46 NY2d 645, 651-652): "the trial court should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror to serve. It is precisely for this reason that so many veniremen are made available for jury service. Nothing is more basic to the criminal process than the right of an accused to a trial by an impartial jury. The presumption of innocence, the prosecutor's heavy burden of proving guilt beyond a reasonable doubt, and the other protections afforded the accused at trial, are of little value unless those who are called to decide the defendant's guilt or innocence are free of bias."

And, while it is true that the Court in *Branch* had as its specific concern the range of permissible discretion in initially qualifying jurors, as opposed to the present concern which is the range of permissible discretion in disqualifying jurors who have already been sworn, the two inquiries are not dissimilar in their criteria or in their ultimate objective which, of course, is to insure the impartiality of the fact finder (*see, People v Rentz, supra*, at 830-831, citing *People v Branch, supra*; *see also, People v Meyer, supra*, at 663-664). Once a juror has been seated a court should, of course, be circumspect about his or her disqualification, particularly where the defendant would retain the juror and, in the absence of alternates, the disqualification would effect the premature termination of the trial (*see, People v Buford*, 69 NY2d 290; *People v Anderson*, 70 NY2d 729; *People v Cargill*, 70 NY2d 687; *People v Dunlap*, 132 AD2d

953, *lv denied* 70 NY2d 799). Where, as here, however, substantial doubts as to a juror's impartiality have been raised and the defendant has requested the juror's removal and substitution with one of several available alternates, the situation is not materially different from that addressed by the Court in *Branch*. In this latter context there can be no justifiable need to test the limits of discretion by retaining a questionable juror; discretion should in this situation be exercised so as to eliminate any substantial doubt respecting the impartiality of the fact finder (*see, People v Meyer, supra*, at 664). Concur— Murphy, P. J., Rosenberger and Rubin, JJ.

Williams and Nardelli, JJ., dissent in a memorandum by Williams, J., as follows: The trial court properly exercised its discretion in denying the defendant's application for discharge of juror number nine, as there was no showing that he was "grossly unqualified to serve", i.e., possessing a state of mind which would prevent the rendering of an impartial verdict (CPL 270.35; *People v Cargill*, 70 NY2d 687, 688-689; *People v Buford*, 69 NY2d 290, 298). The court's "probing and tactful" questioning of the juror on two separate occasions with the participation of defense counsel and the juror's unequivocal assurances in response that he had no personal connection with the complainant, that he would follow the court's instructions regarding evaluation of the evidence, and that he could decide the case in a fair and impartial manner, constituted sufficient assurance of his impartiality (*People v Buford, supra*). Great deference is to be accorded the trial court's findings in this regard (*People v Matiash*, 197 AD2d 794, 795). Under the circumstances, defendant's contentions of purported bias, which were essentially that the juror was familiar with complainant's profession, had attended and worked at the same school, and had inferred that complainant's art training would make him more apt to make an accurate identification, are meritless (*see, e.g., People v Clancy*, 191 AD2d 346, *lv denied* 81 NY2d 968; *People v Smitherman* [the companion case to *People v Buford supra*], at 296, 300).

Accordingly, the judgment of the Supreme Court, New York County (Nicholas Figueroa, J.), rendered November 16, 1990, convicting defendant, after a jury trial, of robbery in the first degree, robbery in the second degree, and attempted robbery in the first degree, and sentencing him to three concurrent terms of 3 to 9 years, should be affirmed.