■ The People of the State of New York, Respondent, v Donnell Bonney, Appellant. [894 NYS2d 192]—

Kavanagh, J. 

Defendant and the victim have been involved in a long-term relationship that has been characterized by numerous assaults and other acts of violence. On September 21, 2007, the victim, upon returning home after spending an evening with friends, received a telephone call from defendant in which he told her

---

that she "better watch [her]self." Shortly after that phone call, defendant, apparently enraged at the prospect that another adult male might be in the house, forced his way into the victim's home, grabbed her by the hair, put a knife to her throat and repeatedly hit her head against the floor and kitchen countertop. He dragged the victim throughout the premises, apparently in search of her male companion, and choked her until she became momentarily unconscious. At one point during the encounter, defendant grabbed a photograph of one of the victim's children and told her that she "was never going to see [her] kids again." The attack continued unabated until the parties' 10-year-old son came into the home and saw defendant on top of the victim strangling her. Defendant, upon seeing his son, spit on the victim and fled. After 911 was called, the victim was taken to the hospital where bruises and abrasions were noted about her head and face and she was found to have sustained a fracture to her thyroid cartilage. She also reported having difficulty with her vision as well as her hearing and claimed to have sustained some loss of memory.

Defendant was subsequently charged by indictment with, among other things, attempted murder in the second degree, burglary in the first degree, assault in the second degree, unlawful imprisonment in the second degree and aggravated harassment in the second degree.* At trial he was convicted of these five charges and sentenced, as a second felony offender, to an aggregate prison term of 24 years, plus five years of postrelease supervision. Defendant now appeals.

Initially, defendant contends that his conviction for attempted murder is not supported by the weight of the credible evidence because it was never established at trial that, at any time during the encounter, he intended to kill the victim as opposed to simply intending to assault her. While conceding that he forced his way into the victim's home, defendant argues that his actions that evening did not amount to conduct that came "dangerously near" to causing the victim's death and did not support the jury's verdict convicting him of attempted murder (*People v Acosta*, 80 NY2d 665, 670 [1993]; *see* Penal Law §§ 110.00, 125.25 [1]; *People v Naradzay*, 11 NY3d 460, 466 [2008]). Specifically, defendant claims that the entire encounter was prompted by his concern for the victim's safety and that he only became angry and agitated once inside the premises

---

* The aggravated harassment charge stemmed from an incident that occurred a week earlier on September 14, 2007 when defendant was alleged to have repeatedly telephoned the victim and left threatening messages on her answering machine.

because he believed that the victim had been entertaining a male visitor. He admits grabbing the victim by her hair, assaulting her and placing his hands about her neck, but denies ever harboring an intent to kill her. He also argues that the victim's prompt discharge from the hospital on the evening of the attack is evidence that she was not seriously injured and that, if he truly intended to kill her, her injuries would have been more serious.

Initially, in determining defendant's state of mind at the time of the attack, his actions must be viewed in connection with the surrounding circumstances, specifically in the context of the parties' long and tumultuous relationship (see People v Timmons, 54 AD3d 883, 885 [2008], lv denied 12 NY3d 822 [2009]; People v Booker, 53 AD3d 697, 703 [2008], lv denied 11 NY3d 853 [2008]; People v Pagan, 12 AD3d 1143, 1144 [2004], lv denied 4 NY3d 766 [2005]). In that regard, evidence was presented at trial that defendant had previously written a letter to the victim while he was incarcerated on another charge in which he warned her that "by the time I get out of here, you better hope that you have sold that house and better hope that I do not find out where you live." In the week immediately prior to this incident, defendant repeatedly telephoned the victim, called her vulgar names and warned her that she had "better watch every move [she made]" and threatened that he would kill her. In addition, coworkers of the victim testified to hearing defendant threaten her and state that he would kill her.

Moreover, the victim testified that, during the attack, defendant used such force when he grabbed her about the neck that she became numb, saw flashes, momentarily lost consciousness and, at some point, sustained a fracture to her thyroid cartilage. Expert testimony introduced at trial established that such a degree of force, when applied to a person's neck, may interrupt the blood supply to the brain and, if applied for a continuous period of "about ten seconds," can cause unconsciousness and, if persistent force is applied, can result in death. Since defendant only ended his assault of the victim when the parties' 10-year-old son happened on the scene and, according due deference to the jury's resolution of credibility issues that arose during the course of this trial (see People v Romero, 7 NY3d 633, 645 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]), ample evidence was presented for the jury to conclude that defendant, during the encounter, formed the requisite intent, his conviction for attempted murder was not against the weight of the evidence (see People v Baker, 27 AD3d 1006, 1009 [2006], lv denied 7 NY3d 785 [2006]; People v Rouse, 4 AD3d 553, 555

[2004], *lv denied* 2 NY3d 805 [2004]; *People v Delosh*, 2 AD3d 1047, 1049 [2003], *lv denied* 1 NY3d 626 [2004]).

We are of the same view as to the evidence offered in support of defendant's conviction for assault in the second degree. Assault in the second degree is committed when "[w]ith intent to cause physical injury to another person, [a defendant] causes such injury . . . by means of a . . . dangerous instrument" (Penal Law § 120.05 [2]). Here, defendant was charged with using the kitchen floor and countertop as a dangerous instrument by repeatedly forcing the victim's head against each surface intending to cause her physical injury. A dangerous instrument is defined as "any instrument . . . which, under the circumstances in which it is used, . . . is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]). In support of his contention that neither the floor nor the countertop were used as dangerous instruments, defendant presented expert medical testimony to the effect that the victim's injuries did not conform to what would otherwise have been expected if either surface had been used as described by the victim during the attack. However, this expert did not deny, under the facts presented, that the victim's head could have been forced against the countertop and floor during the encounter and that such contact could cause her physical injury. Given defendant's admissions regarding his assault of the victim, the victim's testimony, and the injuries that were later noted on her head and face, we cannot conclude that the jury's verdict convicting defendant of assault in the second degree was against the weight of the credible evidence (*see People v Medor*, 39 AD3d 362, 362-363 [2007], *lv denied* 9 NY3d 867 [2007]; *see also People v Roblee*, 70 AD3d 225, 227-228 [2009]; *People v Zabala*, 290 AD2d 578, 580 [2002], *lv denied* 97 NY2d 735 [2002]).

As for his conviction of burglary in the first degree, defendant claims that he resided in the house at the time of the incident and, therefore, had every right to enter it—even forcefully (*see* Penal Law § 140.30 [2]). He also argues that he only forced his way into the premises because he did not have a key and, at the time, feared for the victim's safety. As such, defendant contends that he did not enter the premises with a criminal intent and, therefore, could not have committed a burglary. While the victim acknowledges that defendant previously lived with her on the premises, they had, according to her, ended their relationship prior to the day of the attack and that, on that date, defendant no longer had a legal right to enter the premises without her permission. She testified that the locks had been changed and,

for that reason, defendant no longer had a key to the premises. Defendant confirmed that on the day of the incident he was involved in another relationship with a woman who was providing him with financial support. This evidence and, in particular, defendant's forcible entry into the premises, his assault of the victim and his flight from the scene, all paint a compelling picture of defendant's state of mind at that moment in time and established that his conviction for burglary in the first degree was supported by the weight of the credible evidence (*see People v Johnson*, 20 AD3d 808, 811 [2005], *lv denied* 5 NY3d 853 [2005]; *People v Richards*, 290 AD2d 584, 586 [2002], *lv denied* 98 NY2d 654 [2002]).

Finally, defendant claims that if the jury accepted his explanation as to why he felt compelled to force his way into the victim's home, it could have concluded that he did not enter the premises with the intent to commit a crime and, therefore, was, at best, guilty of a criminal trespass. He argues that County Court committed reversible error by not providing the jury with the option of considering criminal trespass as a lesser included offense to the burglary charge and that his conviction for burglary should be reversed on this basis (*see* CPL 300.50 [1], [2]; *People v Miles*, 55 AD3d 955, 955-956 [2008], *lv denied* 11 NY3d 928 [2009]; *People v Richard*, 30 AD3d 750, 753 [2006], *lv denied* 7 NY3d 869 [2006]). In essence, defendant contends that the jury could have concluded that he was responding to an emergency and that his entry into the victim's home was, under the circumstances, justified and not unlawful (*see* Penal Law § 35.05 [2]; *People v Figueroa*, 154 AD2d 389, 390 [1989], *lv denied* 75 NY2d 770 [1989]; *see also People v Harris*, 50 AD3d 1608, 1608 [2008], *lv denied* 10 NY3d 959 [2008]). However, such an explanation, if accepted, would not have supported a finding that defendant committed any crime by entering the premises and County Court, for that reason, was correct in refusing to submit criminal trespass to the jury for its consideration as a lesser included offense.

Spain, J.P., Rose, Malone Jr. and McCarthy, JJ., concur. Ordered that the judgment is affirmed.

