■ The People of the State of New York, Respondent, v David M. Greenfield, Appellant. [977 NYS2d 486]—

Spain, J. Appeal from a judgment of the County Court of Rensselaer County (Ceresia, J.), rendered March 1, 2011, upon a verdict convicting defendant of the crime of attempted murder in the second degree.

Following a jury trial, defendant was convicted of attempted murder in the second degree for his actions in the early morning hours of July 8, 2010, when he repeatedly stabbed his long-term domestic partner in the neck, chest and shoulder as she lay half asleep in their apartment in the City of Troy, Rensselaer County. Defendant later signed a written statement to police admitting that he stabbed the victim. Sentenced as a second felony offender to a prison term of 25 years with five years of postrelease supervision, defendant appeals.

Addressing defendant's claims directed at the jury's verdict, upon review of the evidence adduced at trial we conclude that it was supported by legally sufficient evidence and was not contrary to the weight of credible evidence (see People v Bleakley, 69 NY2d 490, 495 [1987]). To establish defendant's guilt of attempted murder in the second degree, the People were required to prove that defendant, acting with intent to cause the death of another, engaged in conduct which tended to effect the commission of that crime (see Penal Law §§ 110.00, 125.25 [1]; People v Molina, 79 AD3d 1371, 1375 [2010], lv denied 16 NY3d 861 [2011]). "Where those elements converge, an attempted murder has occurred, regardless of whether the defendant has killed or even injured his or her intended target" (People v Fernandez, 88 NY2d 777, 783 [1996]). While defendant preserved his challenge to the legal sufficiency of the evidence of his intent by his specific motions to dismiss, that motion did not raise his current legal insufficiency claim directed at the proof of whether he came close to causing the victim's death, which is not preserved (see People v Gray, 86 NY2d 10, 19 [1995]). In any event, in addressing his weight of the evidence challenge to this conviction, we necessarily review the adequacy of the evidence as to each element (see People v Danielson, 9 NY3d 342, 348-349 [2007]).

There was no dispute that, without provocation, defendant

straddled the victim and then stabbed her multiple times with knives he had taken from their kitchen, as she lay half asleep in their bed; when she tried to get up, he pushed her down and continued stabbing her, appearing angry, and then called 911 and reported what he had done. When police arrived, the victim was lying in bed covered in blood, which was all over the apartment and on defendant; defendant told police that the knives were in the sink, that he had recent health problems, and that they had been "fighting lately" and "he couldn't take it anymore." Transported to the police station, defendant signed a written statement admitting that he and the victim had "been having problems for a long time," that he had tried to leave her but always went back, and he "figured it was just as easy to stab her"; he admitted that he stabbed her "fast six or seven times below the throat" and continued doing so, stopping when he "had enough" or "realized it wasn't doing anything." Viewing the evidence in the light most favorable to the People and considering the surrounding circumstances, we find that there was legally sufficient evidence to allow a rational juror to infer that defendant acted with the intent to cause the victim's death (*see People v Naradzay*, 11 NY3d 460, 466-467 [2008]; *People v Contes*, 60 NY2d 620, 621 [1983]; *People v Bracey*, 41 NY2d 296, 301 [1977]; *People v Bonney*, 69 AD3d 1116, 1118 [2010], *lv denied* 14 NY3d 838 [2010]; *People v Rose*, 122 AD2d 484, 486-487 [1986]).

Further, although a different verdict would not have been unreasonable, viewing the evidence in a neutral light, we do not find that the jury erred in crediting the victim's testimony, which was consistent with defendant's admissions to police after the attack (*see People v Bleakley*, 69 NY2d at 495). Defendant testified, admitting that he stabbed the victim as she described, but claiming that he did not remember doing so. He repudiated portions of his statement to police, but not his admission to the stabbing. While he asserted that he did not intend to hurt her, the jury obviously and, in our view, rationally, discredited this denial, given the nature of his actions and his admissions. The People also proved that defendant came dangerously near to causing the victim's death (*see People v Kassebaum*, 95 NY2d 611, 618 [2001], *cert denied* 532 US 1069 [2001]; *People v Acosta*, 80 NY2d 665, 670 [1993]; *People v Cooley*, 50 AD3d 1548, 1549 [2008], *lv denied* 10 NY3d 957 [2008]). Even if the jury had credited defendant's expert—who concluded that the victim's injuries were not life threatening—over the People's witness—the emergency room physician who treated her and found that her injuries were life threatening—this would not have undermined the jury's conclusion that defendant came

dangerously near to causing the victim's death, as "the crime of attempted murder does not require actual physical injury to a victim at all" (*People v Fernandez*, 88 NY2d at 783).

We agree, however, with defendant's claim that County Court committed reversible error when it denied his challenge for cause to prospective juror No. 81. A prospective juror may be challenged for cause on several grounds, including that he or she has a prior "relationship" with either a prospective witness, the victim, or counsel for the People or the defendant "of such a nature that it is likely to preclude him [or her] from rendering an impartial verdict" (CPL 270.20 [1] [c]). Both "[t]he frequency of contact and nature of the parties' relationship are to be considered in determining whether disqualification is necessary" (*People v Furey*, 18 NY3d 284, 287 [2011]). Known as "implied bias," the existence of such a relationship that is likely to preclude an impartial verdict "requires automatic exclusion from jury service regardless of whether the prospective juror declares that the relationship will not affect [his or] her ability to be fair and impartial [a]nd such bias . . . cannot be cured with an expurgatory oath" (*id.* [internal citations omitted]). The rationale is that "the risk of prejudice arising out of the close relationship . . . [is] so great that recital of an oath of impartiality could not convincingly dispel the taint" (*People v Branch*, 46 NY2d 645, 651 [1979]), that is, the relationship "creates the perception that the accused might not receive a fair trial before an impartial finder of fact" (*People v Furey*, 18 NY3d at 287).

Here, prospective juror No. 81 stated during voir dire that he is a federal law enforcement agent (with the Bureau of Alcohol, Tobacco, Firearms and Explosives) and has, over the years, worked "hand in hand" on "quite a few" cases with the Rensselaer County District Attorney's office, although "not many" in the past two or three years, and that he had a good professional relationship with that office. He then disclosed that he was, presently, actively working on a case in an investigative capacity with that District Attorney's office. Defense counsel challenged this prospective juror for cause based upon his ongoing working law enforcement relationship with the District Attorney's office, which County Court denied.

Of course, not all relationships, particularly professional ones, between a prospective juror and relevant persons, including counsel for either side, require disqualification for cause as a matter of law (*see id.*). Trial courts are directed to look at myriad factors surrounding the particular relationship in issue, such as the frequency, recency or currency of the contact,

whether it was direct contact, and the nature of the relationship as personal and/or professional (*see id.* at 287-288; *People v Scott,* 16 NY3d 589, 595 [2011]; *People v Rentz,* 67 NY2d 829, 830-831 [1986]; *People v Branch,* 46 NY2d at 650-651; *People v Rowe,* 253 AD2d 831, 831 [1998], *lv denied* 92 NY2d 985 [1998] [relationship "remote in all respects" with the District Attorney's office and trial prosecutor did not render jurors biased]; *see also People v Green,* 108 AD3d 782, 784 [2013], *lv denied* 21 NY3d 1074 [2013]) or merely "a nodding acquaintance" (*People v Provenzano,* 50 NY2d 420, 425 [1980]). Indeed, any facet of the relationship likely to preclude the prospective juror from being impartial should be considered by the trial court (*see* CPL 270.20 [1] [c]; *People v Colon,* 71 NY2d 410, 418-419 [1988], *cert denied* 487 US 1239 [1988]). Neither prospective juror No. 81's status as a law enforcement officer (*see People v Pickren,* 284 AD2d 727, 727 [2001], *lv denied* 96 NY2d 923 [2001]) nor his former, solely professional relationship with the District Attorney's office, which was largely remote in time or—more recently—infrequent (*see People v Scott,* 16 NY3d at 595; *cf. People v Furey,* 18 NY3d at 288; *People v Branch,* 46 NY2d at 651), required his disqualification for cause here.

However, we find that the prospective juror's *current, ongoing investigative work* on a pending matter in cooperation with and under the direction of the prosecuting agency required that juror's dismissal for cause (*see People v Lynch,* 95 NY2d 243, 248 [2000] [student intern employed at prosecutor's office should have been dismissed for cause]; *cf. People v Scott,* 16 NY3d at 595 [former professional relationship, "distant in time and limited in nature," did not require disqualification]; *People v Rowe,* 253 AD2d at 831). The nature of that relationship as purely professional, while certainly a very weighty factor, is not alone determinative of the absence, or presence, of implied bias, as other factors must be taken into consideration, such as the frequency, scope and recency of the contact (*see e.g. People v Scott,* 16 NY3d at 595 [looks at recency and scope]; *People v Rentz,* 67 NY2d at 830-831 [juror with professional relationship with two witnesses and personal one with one witness should have been disqualified]; *People v Branch,* 46 NY2d at 650-651 [looked at "direct contact" with the District Attorney and that juror had "worked directly" with trial prosecutor, in addition to having personal relationship with trial prosecutor]; *People v Wlasiuk,* 90 AD3d 1405, 1412 [2011] [juror failed to disclose professional relationship as coworker to victim]; *People v Littebrant,* 55 AD3d 1151, 1154 [2008], *lv denied* 12 NY3d 818 [2009] [juror with professional and long-term personal relationship with key defense witness properly excused for cause]).

Under the circumstances presented here, we conclude that the prospective juror No. 81's current law enforcement cooperative relationship with the prosecuting agency "create[d] the perception that the accused might not receive a fair trial before an impartial finder of fact" (*People v Furey*, 18 NY3d at 287), requiring that he be dismissed for cause on defendant's motion (*see* CPL 270.20 [1] [c]). The erroneous denial of that defense challenge for cause requires reversal because the defense peremptorily challenged the juror in issue and exhausted its peremptory challenges before the completion of jury selection (*see* CPL 270.20 [2]). It is for this reason that trial courts, which we recognize are required to make rapid-fire rulings during jury selection, have been advised to "exercise caution" (*People v Furey*, 18 NY3d at 287) and "lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror to serve . . . [in order to ensure] the right of an accused to a trial by an impartial jury" (*People v Branch*, 46 NY2d at 651).

In light of the foregoing, we need not address defendant's remaining claims, including his contention that he was penalized with a significantly longer prison sentence for declining a plea offer and electing to proceed to trial.

Peters, P.J., Lahtinen and Egan Jr., JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Rensselaer County for a new trial.