People v McGregor (2019 NY Slip Op 08283)





People v McGregor


2019 NY Slip Op 08283


Decided on November 14, 2019


Appellate Division, First Department


Renwick, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 14, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick, J.P.
Sallie Manzanet-Daniels
Jeffrey K. Oing
Anil C. Singh,JJ.


2606/16 9983 

[*1]The People of the State of New York, Respondent,
v
Tysheem McGregor, Defendant-Appellant.



Defendant appeals from a judgment of the Supreme Court, New York County (Robert M. Stolz, J.), rendered December 11, 2017, convicting him, after a jury trial, of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree (two counts), and conspiracy in the second and fourth degrees, and imposing sentence.




Debevoise & Plimpton LLP, New York (Joshua Cohen, Tara Raam, Colby A. Smith and Jil Simon of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Andrew E. Seewald and Deborah L. Morse of counsel), for respondent.



RENWICK J.


In this appeal, we must consider whether a juror's misconduct during jury deliberations deprived defendant of his right to a fair trial, and thus whether Supreme Court abused its discretion in denying defendant's postverdict motion to vacate the judgment of conviction. Specifically, a juror, who was admittedly attracted to a People's witness, sought to develop a relationship with that witness during jury deliberations. For the following reasons, we find that this juror misconduct did deprive defendant of a fair trial, and that Supreme Court abused its discretion as a matter of law when it denied defendant's motion to vacate pursuant to CPL 330.30(2). Accordingly, we now grant the motion to vacate the judgment and remand the matter for a new trial.
Defendant was charged with several counts of conspiracy, attempted murder in the second degree (four counts), and related offenses. The indictment alleged that, between May 2014 and June 2016, defendant, along with 19 others, was a member of an East Harlem street gang known as East Army and sought to assert control over gang territory by means including shootings, assaults, and firearms possession and trafficking. The substantive counts charged [*2]against defendant related to four shooting incidents, which took place on May 5, June 22, August 6, and December 21, 2015.
One of the witnesses for the People testified that he was a member of a rival gang and was testifying against defendant as part of a cooperation agreement. He identified defendant as a member of East Army, although he admitted that he had only interacted with defendant three or four times, never spoke with him, and knew him mostly from his music videos, as well as "house parties and a couple of fights." He also identified defendant in surveillance video from the June 22nd incident.
After a six-week trial, which included testimony from nearly 100 witnesses, the jury found defendant guilty on the substantive counts related to the December 21st incident, as well as the conspiracy charges, but acquitted him of the substantive counts related to the remaining three incidents.
After the verdict, but before sentencing, the cooperating witness informed the prosecutor that he had been corresponding with one of the jurors (Juror No. 6), who was currently visiting him in jail. Thereafter, on July 27, 2017, Juror No. 6 sent the prosecutor a letter requesting that the witness's sentence be reduced in view of his cooperation. On August 30, 2017, the witness wrote to the court, asking its assistance in obtaining a marriage license to marry Juror No. 6.
At a hearing on September 7, 2017, the prosecutor shared the results of her investigation into the relationship between the witness and Juror No. 6. The prosecutor determined that, on June 26, 2017, the juror sent a letter to the witness in jail. The juror stated that she was a juror in defendant's case, that she "fe[lt] for" the witness, that "seeing [him] and hearing [him] up there on the stand made [her] feel some type of way," and that she would like to write or speak to him, and included her phone number. The prosecutor represented that she had retrieved the witness's phone records from jail, which reflected that he had called Juror No. 6 on July 4th but the call was not accepted, and that it was not until after the verdict was reached that they were able to connect.
A CPL 330.30 hearing was held, at which both the witness and Juror No. 6 testified. The witness affirmed that he did not know Juror No. 6 before the trial, that the letter was the first contact he had with her, and that he was not able to get through when he called her on July 4th. He further testified that he and Juror No. 6 now talked 3 to 4 times a day and he had received approximately 50 letters from her.
Juror No. 6 testified that she was inspired to write to the witness because she "felt bad for someone who really did try to change their life and then their history caught up" and "obviously there was a physical attraction." The juror further testified that she was aware that she was not supposed to "reach out to anybody that is in the trial," but "wasn't even thinking about any of that at that moment" because she was "just being a human being making a mistake."
Juror No. 6 explained that she missed the witness's call on July 4th, but knew from the voicemail that it was from him. However, she was not able to figure out how to call back until a couple of days later.
The juror testified that she did not communicate with any of the jurors about the witness. When asked whether she understood the witness's testimony to be adversarial to defendant, she responded, "In a way. I just didn't see it like that because to me his whole testimony was like irrelevant to Tysheem's trial." After the hearing, defendant formally moved to set aside the verdict pursuant to CPL 330.30(2) on the ground of juror misconduct. The motion court denied the motion, holding that while the juror's conduct was "unwise," it was "not of the kind which may have [a]ffected the fairness of the proceeding or a substantial right of the defendant." We disagree.
CPL 330.30(2) authorizes a court to set aside a verdict on the ground of juror misconduct that "may have affected a substantial right of the defendant" and "was not known to the [*3]defendant prior to the rendition of the verdict." If juror misconduct of the kind outlined in CPL 330.30(2) is found, the court is not to engage in a separate harmless error analysis (see People v Estella, 68 AD3d 1155, 1158 [3d Dept 2009]; see also People v Crimmins, 36 NY2d 230, 238 [1975]). However, "[a]bsent a showing of prejudice to a substantial right," CPL 330.30(2) is not implicated in the first place. As such, "[e]ach case must be examined on its unique facts to determine the nature of the misconduct and the likelihood that prejudice was engendered" (People v Irizarry, 83 NY2d 557, 561 [1994] [internal quotation marks omitted]; see also People v Southall, 156 AD3d 111, 118-119 [1st Dept 2017], lv denied 30 NY3d 1120 [2018]).
Both the state and federal constitutions guarantee the accused the right to a fair and "impartial jury" (People v Johnson, 94 NY2d 600, 610 [2010]; People v Blyden, 55 NY2d 73, 76 [1982]; People v Branch, 46 NY2d 645, 652 [1979] ["protections afforded the accused at trial are of little value unless those who are called to decide the defendant's guilt or innocence are free of bias"]; Irvin v A.F. Dowd, 366 US 717 [1961] [right to a fair and impartial jury is at the core of due process]). As the Court of Appeals recently reminded us in People v Neulander, "nothing is more basic to the criminal process than the right of an accused to a trial by an impartial jury" (__NY3d__, __ [2019], NY Slip Op 07521 *1, quoting People v Branch, 46 NY2d at 652 [1979]). Moreover, "the public at large" has a "concomitant right . . . that the jury appear to be impartial" (People v Hartson, 160 AD2d 1046, 1048 [3d Dept 1990]).
Juror misconduct includes both "actual bias" and "implied bias." Despite its name, "actual" bias merely requires proof of "a state of mind" that is "likely" to preclude a juror from rendering an impartial verdict (People v Torpey, 63 NY2d 361, 365 [1984] [internal quotation marks omitted]). Under CPL 270.20(1)(b), "[a]ctual bias. . . is not limited . . . to situations where a prospective juror has formed an opinion as to the defendant's guilt" (Torpey, 63 NY2d at 366). It may be demonstrated where a prospective juror's conduct indicates her inability to follow the court's instructions.
"Implied bias" exists where a juror "bears some ... relationship to any such person [defendant, witness, prosecution] of such nature that it is likely to preclude [the juror] from rendering an impartial verdict" (CPL 270.20[1][c]; People v Branch, 46 NY2d at 649-650). "[T]he frequency of contact and nature of the parties' relationship are to be considered in determining whether disqualification is necessary" (People v Furey, 18 NY3d 284, 287 [2011).
Implied bias "requires automatic exclusion from jury service regardless of whether the prospective juror declares that the relationship will not affect [his or] her ability to be fair and impartial" (People v Furey, 18 NY3d at 287; People v Rentz, 67 NY2d 829 [1986] [juror's statement at posttrial hearing that relationship did not affect his impartiality is ineffective]).
Here, there was both actual and implied bias. The misconduct by Juror No. 6 was willful and blatant - the juror was admittedly attracted to the witness, a cooperating witness testifying on behalf of the People, and sought to develop a relationship with him while jury deliberations were still underway - even though she knew this was not permitted. The juror knew during deliberations that the witness had tried to call her back, suggesting that the interest was mutual, and the juror is now in a very serious relationship with the witness and seeks to marry him. Although the juror denied that her feelings about the witness affected her thinking about defendant, she was at least arguably more likely to credit his testimony and could subconsciously have sought to aide the side with which the witness was aligned (see People v Rentz, 67 NY2d at 831).
Indeed, in People v Southall (156 AD3d 111 [1st Dept 2017], this Court granted a CPL 440.10(1)(f) motion to vacate a conviction due to a juror's misconduct in an analogous situation. Southall involved "[i]mproper and prejudicial conduct" in the form of a juror's failure to reveal during jury selection that she had submitted an application to work for the District Attorney's office. This Court found that actual bias could be inferred from the juror's concealment of this [*4]information, notwithstanding her subjective belief that the pending application had no impact on her decision (id. at 121-122). The Court also found that the juror had an implied bias, as her job application "created a relationship between her and the DA's office, which raised a high likelihood that she would be inclined to favor the People" (id. at 123-124).
The instant case is similar to Southall in that both cases involved an as-yet unanswered request to create some type of relationship (either romantic or professional) with the prosecution or a prosecution witness. The juror's knowledge that she was seeking a relationship with a witness who was testifying against defendant and in favor of the People created a disposition in favor of the People, which was "likely to preclude [her] from rendering an impartial verdict" (CPL 270.20[1][c]). As this Court held in Southall, the juror's assertions of impartiality were irrelevant because her bias was incurable, and therefore, the defendant's right to a fair trial before an impartial jury had been violated (id. at 124).
The People contend that the juror's misconduct was obviated by the fact that, even without the witness's testimony, the case against defendant was overwhelming. Recently, in People v Neulander, the Court of Appeals rejected a similar argument with regard to a misconduct by a juror who engaged in improper communications during trial. In People v Neulander (__NY3d__, __, 2019 NY Slip OP 07521 *3), the juror misconduct, disregarding the court's plentiful instructions as to outside communications, was exacerbated when the juror was examined by the court about the breadth of her outside communications and was repeatedly and deliberately untruthful about the scope of that misconduct. The People contended that however egregious the misconduct was, it was "significantly outweighed by the substantial proof of guilt presented at trial." The Court of Appeals categorically rejected such argument because " [t]he right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right'" (__NY3d__, __, 2019 NY Slip OP 07521 *3, quoting People v Crimmins, 36 NY2d at 238) and " [t]he public at large is entitled to the assurance that there shall be full observance and enforcement of the cardinal right of a defendant to a fair trial'" (id.). The same concerns apply to this case where equally egregious juror misconduct undermined defendant's right to a fair trial before an impartial jury.
Finally, the verdict was not legally insufficient or against the weight of the evidence, and there is thus no basis for dismissal of the indictment. Since we are reversing the judgment and ordering a new trial, and granting the motion to vacate, we need not reach defendant's remaining arguments.
Accordingly, the judgment of the Supreme Court, New York County (Robert M. Stolz, J.), rendered December 11, 2017, convicting defendant, after a jury trial, of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree (two counts), and conspiracy in the second and fourth degrees, and sentencing him to an aggregate term of 15 years, should be reversed, on the law, and the matter remanded for a new trial.
All concur.
Judgment Supreme Court, New York County (Robert M. Stolz, J.), rendered December 11, 2017, reversed, on the law, and the matter remanded for a new trial.
Opinion by Renwick, J. All concur.
Renwick, J.P., Manzanet-Daniels, Oing, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: NOVEMBER 14, 2019
CLERK