OPINION OF THE COURT
Joseph L. Latwin, J.
The defendant is charged by a misdemeanor information with violating Penal Law § 121.11 (criminal obstruction of breathing) and Penal Law § 240.26 (1) (harassment, second degree).
At the trial, Seasonal Park Ranger (SPR) McAuliffe testified he was working the 1400 to 2000 shift at Playland Park in the City of Rye on August 23, 2012. At about 1930 hours, he was stationed at the post at the traffic circle near the main entrance. He saw two individuals in what he described as a domestic dispute about 100 feet from him. He saw a man, identified as the defendant, choking a woman by placing his left hand on the woman’s throat and his right hand on the back of her neck. The SPR said he saw the woman’s color “turned white,” her eyes “bugged out” and saw the woman struggle for air and “locked up” by extending her stiffened legs. The SPR yelled at the couple and separated them. After they were separated, SPR Mc-Auliffe saw that the woman appeared to be in shock. On cross-examination, SPR McAuliffe acknowledged he did not mention seeing the victim’s eyes bulging, nor that he saw a full force choke hold, nor anything about a change in the woman’s coloring in his written statement. He also said the choking lasted two seconds and resulted in no observable injuries nor required any medical attention.
Police Officer Percopo also testified. She was on duty at Play-land when she received a call of a domestic incident. She saw SPR McAuliffe separating the defendant from the woman and went to the woman. She did not see any choking but heard yell *1012 ing after the parties were separated. She testified the woman was visibly upset and “frantic” and had put her hands to her neck, in what first responders called the universal signal for choking.[1] Police Officer Percopo also observed red marks on the woman’s neck. On cross-examination, Police Officer Percopo said there were no other people in the area at the time she arrived. She acknowledged she did not note observing any red marks on the victim’s neck in her reports. Police Officer Percopo also confirmed that the victim denied any injury and refused to cooperate. She also checked off “victim not fearful” on her report.
Neither the victim, the defendant nor anyone else testified. No reason was proffered for the victim’s failure to testify.
The Surgeon General’s Workshop on Violence and Public Health Report of October 1985 (available at http:// profiles.nlm.nih.gov/ps/access/NNBCFX.pdf) listed attempted strangulation in the top 10 on its physical abuse ranking scale. Before 2010, there was no specific New York law prohibiting strangulation — it was prosecutable only when accompanied by a serious physical injury such that it became an assault. Studies show that most strangulation cases leave little or no visible physical signs to corroborate a “choking” case. Fifty percent had no visible injury and another 35% had injuries too minor to photograph. (See Strack et al., A Review of 300 Attempted Strangulation Cases, Part I: Criminal Legal Issues, 21 J Emergency Med 303, 306 [Oct. 2001].) In some cases, death might result a week later or by further violent acts. (See Strack et al., Part I, supra, at 307; Strack et al., A Review of 300 Attempted Strangulation Cases, Part II: Clinical Evaluation of the Surviving Victim, 21 J Emergency Med 311, 313 [Oct. 2001].)
Strangulation was also a precursor of further domestic violence. (Berrios et al., Domestic Violence Risk Factors and Outcomes, 155 W J Med, 133, 133-135 [Aug. 1991].) The Minnesota Coalition for Battered Women stated that 43% of domestic homicide victims had been strangled by their perpetrator within the last 12 months.
Although New Yorkers are too familiar with “choking,”[2] albeit of a different nature, until 2010 there was no specific law prohibiting strangulation.
*1013 Penal Law article 121 was added in 2010. (L 2010, ch 405.) Penal Law § 121.11 (a), criminal obstruction of breathing or blood circulation, is a fairly new law. It says “[a] person is guilty of criminal obstruction of breathing or blood circulation when, with intent to impede the normal breathing or circulation of the blood of another person, he or she: a. applies pressure on the throat or neck of such person.”
The law’s purpose was to “increase penalties for conduct involving the intentional impeding or impairing of another person’s breathing . . . including but not limited to circumstances where such conduct leads to unconsciousness for any period of time or any other physical injury or impairment.” (Senate Introducer Mem in Support, Bill Jacket, L 2010, ch 405 at 7.)[3] In his sponsor’s memorandum, then-Senator Schneider-man noted that “[u]nder [then] current law, there [was] no specific crime aimed at conduct involving the intentional blocking of a victim’s breathing or circulation. . . . [W]here no physical injury is present, even the misdemeanor crime of assault in the third degree is not applicable.” (Id. at 9.) Senator Schneiderman justified the bill saying,
“Strangulation has been identified in recent years as one of the most lethal forms of domestic abuse. When perpetrators use strangulation to silence their victims, this is a form of power and control. This form of power and control has a devastating psychological effect on victims and a potentially fatal outcome.
“Just 11 pounds of pressure applied for 10 seconds can choke someone unconscious. [W]ith greater pressure, death can occur within minutes. Yet a study of strangulation cases found that in 62% of cases there were no visible injuries. Though strangulation is incredibly [dangerous], representing 10% of *1014 violent deaths in the U.S. each year (six females to every male), it may be impossible to prove physical injury in many cases, because few or no visible marks are left, and the victim’s suffering is the torment of near asphyxiation rather than ‘pain’ per se. “Historically, ‘choking’ was minimized and often not prosecuted as a serious offense usually due to the lack of physical evidence resulting from the strangulation. By substantially increasing penalties for this conduct, these offenses once thought to be unprosecutable may now be submitted for either class A misdemeanor or violent felony prosecution.” (Id,.; see also Assembly Sponsor’s Mem, Bill Jacket, L 2010, ch 405 at 13.)
“The rationale for the legislation, as explained in the Legislative Memorandum, was that: ‘The intentional obstruction of a person’s breathing or circulation is among the most potentially lethal forms of [domestic] abuse. . . . [T]hese acts send a message to the victim that the batterer holds the power to take the victim’s life, with little effort, in a short period of time, and in a manner that may leave little evidence of an altercation. . . . The suffering endured by these victims often includes torment caused by the blocking of blood flow and/or near asphyxiation; it is not necessarily limited to “pain” alone.’
“Thus, ‘criminal obstruction of breathing or blood circulation’ makes it a misdemeanor to apply pressure on the throat or neck of a person, or to block the nose or mouth of [a] person, with the intent ‘to impede the normal breathing or circulation of the blood’ of that person [Penal Law § 121.11], Notably, there is no requirement that the offender cause pain, trauma, or injury. . . .
“People v. Bonney, 69 A.D.3d 1116, 894 N.Y.S.2d 192 (3rd Dept. 2010) (. . . where ‘ . . . [e]xpert testimony introduced at trial established that such a degree of [force], when applied to a person’s neck, may interrupt the blood supply to the brain and, if applied for a continuous period of “about ten seconds,” can cause unconsciousness and, if persistent force is applied, can result in death’).” (William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Penal Law § 121.11, 2013 Pocket Part *1015 at 38-39.)
The Office for the Prevention of Domestic Violence counsel’s memo on 2010 NY Senate Bill S6987A noted,
“Under New York Penal Law, one must prove that the defendant caused physical injury to the victim. Physical injury has been defined as: ‘impairment of physical condition or substantial pain’ (EL. § 10.00 (9)). Courts have dismissed charges or reduced charges involving strangulation when this ‘physical injury’ requirement was not met. However, a victim who may have no visible injuries at the time of the incident could die, up to days or weeks after the incident, due to the progressive and irreversible effects of the strangulation. [A Review of 300 Attempted Strangulation Cases Part III: Injuries in Fatal Cases, Journal of Emergency Medicine, Vol. 21, No.3 pp317-322 (2001).] A San Diego study of 300 strangulation incidents involving victims of domestic violence found no evidence of physical injury in fifty percent of the incidents, and only minor levels of injury in another thirty five percent of the incidents. [A Review of 300 Attempted Strangulation Cases Part II: Clinical Evaluation of the Surviving Victim, Journal of Emergency Medicine, Vol. 21, No.3 pp311-315 (2001)].” (Bill Jacket, L 2010, ch 405 at 20 [original citational footnotes in brackets].)
The counsel’s office memorandum noted the bill creates three levels of crimes. The misdemeanor charge of criminal obstruction of breathing or blood circulation makes it a crime to impede the normal breathing or blood circulation of another. This provision does not require proof of physical injury, thus it addresses the current gap in our Penal Law and provides law enforcement with the tools they need to appropriately charge this horrible act.
The New York State Coalition against Domestic Violence also supported the law, noting
“[i]njury can occur, but not be visible, and the victim may not realize the impact of that injury until hours or days later.
“Strangulation does not always result in death, however research shows that ten percent of the violent deaths in the United States are attributable to strangulation. [Gael B. Strack, JD, George E. McClane, MD, Dean Hawley, MD. A Review Of 300 *1016 Attempted Strangulation Cases, Part I: Criminal Legal Issues: The Journal of Emergency Medicine, Yol. 21, No. 3, pp. 303-309 (2001)].
“Studies show that strangulation is a significant risk factor for attempted or completed homicide. For example, a study of women killed by a male partner in Chicago concluded that 53% of the victims had experienced strangulation in the preceding year and 18% of the victims had been killed by strangulation. [Block, C.R., Levitt, C.O., Fonda, D., Fugate, M., Martin, C., McFarlane, J., et al. (2000). The Chicago Women’s Health Study: Risk of serious injury or death in intimate violence: A collaborative research project. Washington, DC: U.S. Department of Justice, National Institute of Justice)].” (Bill Jacket, L 2010, ch 405 at 24 [original citational footnotes in brackets].)
The Women’s Bar Association of the State of New York (WBASNY) submitted an insightful memorandum in support of the law. It noted the need for this legislation since, without any signs of physical injury, it can be difficult to prosecute incidences of choking that often occur during domestic violence incidents. The WBASNY believed that the bills set out the wrong intent noting that it required intent to cut off the breathing of another. The Association feared this would incorporate acts that should not be prosecuted, such as placing a hand on a child’s mouth to quiet a child, holding a child by the scruff of the neck for disciplinary purposes, engaging in horseplay, or in consensual sexual practices.[4] It suggested that the intent needed would be to cause intimidation, annoyance, alarm, physical injury or fear for the safety of another.
Several states have laws criminalizing strangulation. Alabama makes strangulation a felony crime of domestic violence if the victim has a close relationship with the perpetrator. (Ala Code § 13A-6-138.) Connecticut’s strangulation in the second degree is very similar to New York’s statutory language. (Conn Gen Stat Ann § 53a-64bb.) It is a felony in Connecticut. (See State v Miranda, 142 Conn App 657, 64 A3d 1268 [2013].) Other *1017 state laws include: Idaho Code Annotated § 18-923 (requiring no proof of injury to prove attempted strangulation); Michigan Compiled Laws § 750.84 (requiring intent to do great bodily harm); and Rhode Island General Laws § 11-5-2.3 (c) (similar to New York).
Penal Law § 121.11 requires proof beyond a reasonable doubt that both:
1. the defendant applied pressure on the throat or neck of another; and
2. the defendant did so with the intent to impede the normal breathing or circulation. (See CJI2d[NY] Penal Law § 121.11.)
There is but one reported case discussing the substance of Penal Law § 121.11. (People v White, 100 AD3d 1397 [4th Dept 2012].) In White, the defendant was charged with criminal obstruction, second degree, in violation of Penal Law § 121.12. That charge requires, in addition to the elements of Penal Law § 121.11, that the obstruction “thereby causes stupor, loss of consciousness for any period of time, or any other physical injury or impairment.” The trial court found there was no evidence that defendant caused stupor or loss of consciousness, and the issue was whether the evidence “establish[ed] a ‘physical injury or impairment.’ ” (At 1399.) In White, the victim testified that defendant squeezed his throat for about three seconds, and that it was painful. He further testified that, during the remainder of that night as well as during the next day, his throat was “tingly,” but there was no testimony that he needed medical assistance. The Appellate Division found that this did not constitute “physical injury or impairment” and that the trial court had properly found the testimony insufficient to charge violation of Penal Law § 121.12 but properly reduced the charge to Penal Law § 121.11.
“As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof.” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998].) “[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning” (Pultz v Economakis, 10 NY3d 542, 547 [2008]).
The language of Penal Law § 121.11 is clear. The only action required is “applying] pressure on the throat or neck of another.” It does not require that the breathing be completely blocked. It completely fails to mention any requirement of phys *1018 ical injury or impairment.[5] It is clear from the legislative history set forth above and People v White that no physical injury or impairment is required to sustain a Penal Law § 121.11 charge.[6] This reading is also bolstered by the inclusion of such a requirement in Penal Law § 121.12.
It is equally clear that no minimum period of contact is required. (People v White [three seconds was enough].) The legislative history is replete with references to the short periods of time in which injury or death can occur. Unconsciousness can occur within seconds. Only 11 pounds of pressure placed on both carotid arteries for 10 seconds is needed to cause unconsciousness, and death within minutes. (See Sanctuary for Families Letter in Support, Bill Jacket, L 2010, ch 405 at 28; Strack et al., A Review of 300 Attempted Strangulation Cases, Part III: Injuries in Fatal Cases, 21 J Emergency Med 317, 320-321 [Oct. 2001].) Within 30 seconds, temporary or permanent brain damage may occur. A gentle squeeze of the neck for a long period may cause injury, but on the other hand, a karate-style chop with but a brief moment of contact could cause the complete collapse of the windpipe and cause death or unconsciousness. The gravamen of the charge is not the time of the obstruction, but that the obstruction occurred. The courts must be extremely wary, as pointed out by the Women’s Bar Association, to read the statute so as to insure it does not incorporate acts that should not be prosecuted such as placing a hand on a child’s mouth to quiet a child, holding a child by the scruff of the neck for disciplinary purposes, horseplay, or consensual sexual practices. Here, the evidence established the defendant applied pressure to the victim’s neck for at least two seconds, causing her to exhibit indicia of choking.
*1019 Intent
Intent means conscious objective or purpose. (See Penal Law § 15.05 [1].) A person acts with the intent to impede the normal breathing or circulation of the blood of another person when his or her conscious objective or purpose is to do so. The trial testimony was that the defendant placed his hands around the victim’s neck and applied pressure. There was no countervailing testimony nor explanation that the placing of the hands around the victim’s neck was for any purpose other than to restrict breathing or circulation. The element of intent may be inferred from all the circumstances. (People v Coluccio, 170 AD2d 523 [2d Dept 1991].) The defendant was observed placing his hands around the victim’s neck during the course of an argument and after the victim had slapped the defendant. From these circumstances, the trier of fact may infer that defendant’s actions were done with the conscious purpose of ending the argument with the victim by forcing her submission due to the inability to breathe or loss of consciousness by the lack of flow of blood to the brain.
The uncontroverted testimony at trial was that after the defendant put his hands on the victim’s throat the victim’s color “turned white,” her eyes “bugged out” and she struggled for air and “locked up” by extending her stiffened legs. This testimony was sufficient to prove the defendant’s actions impeded the victim’s normal breathing.
Accordingly, the People have proved beyond a reasonable doubt that the defendant violated Penal Law § 121.11.
Harassment in the Second Degree
“A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:
“1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same” (Penal Law § 240.26).
Historically, harassment in the second degree was charged when strangulation occurred but there was no substantial physical injury. However with the creation of the strangulation law, harassment in the second degree became a lesser included offense[7] of Penal Law § 121.11.[8]
To determine if an offense is a lesser included offense, the *1020 court must consider: (1) in the abstract, the Penal Law definition of the crime charged in relation to the Penal Law definition of the claimed lesser included offense, i.e., is it theoretically impossible to commit the greater crime without at the same time committing the lesser; and (2) is there a reasonable view of the evidence in the particular case that would permit the jury to conclude that the defendant committed the lesser but not the greater offense? (People v Green, 56 NY2d 427 [1982]; see also People v Glover, 57 NY2d 61, 63 [1982]; People v Butler, 84 NY2d 627 [1994].) Behind the doctrine of lesser included offense stands the basic principle that a defendant should not be convicted and punished more than once for conduct that, although constituting only one prohibited act, may, because of statutory definition, be theorized as constituting separate criminal acts. (People v Perez, 45 NY2d 204 [1978].)
If the court finds the defendant guilty of violating Penal Law § 121.11 (a), criminal obstruction of breathing, it would necessarily have to find the defendant guilty of violating Penal Law § 240.26 (1), harassment in the second degree. If one is found to have applied “pressure on the throat or neck” — an element of Penal Law § 121.11 (a) — they must have subjected “such other person to physical contact” — as a required element of Penal Law § 240.26.
Here, if the court finds the defendant guilty of criminal obstruction of breathing, it would be impossible to find the strangulation of another person without also finding them guilty of harassment in the second degree.[9] Accordingly, the charge of harassment in the second degree should be dismissed as a lesser included offense of the crime of criminal obstruction of breathing.
Accordingly, the court finds the defendant guilty of violating Penal Law § 121.11 (a) and the charge of Penal Law § 240.26 is dismissed.

. The universal sign for choking is one’s own hands clutched to the throat.

. The 2004 Yankees led the Red Sox three games to none in the ALCS, but went on to lose the best of seven series 4-3. In 2007, the Mets had to win two more games during their home stand at the end of the season in order to *1013 win the NL East. Instead, the Mets lost six out of the last seven games of the season. The 2007 Mets ended up finishing up just one game behind the Phil-lies. In 2008, the Mets held onto first place until September 16, when a September surge moved the Phillies into first place. The Phillies won the National League East on September 27, while the Mets were eliminated from postseason contention the next day with a 4-2 loss to the Florida Marlins in the final game at Shea Stadium. The Milwaukee Brewers defeated the Chicago Cubs that day to clinch the National League wild card. In December 2008, Phillies pitcher Cole Hamels said on ESPN, “For the past two years they’ve [the Mets] been choke artists.”

. All the memoranda supporting the law can be found at http:// image.iarchives.nysed.gov/images/images/171864.pdf.

. Erotic asphyxiation or breath control play is the intentional restriction of oxygen to the brain for sexual arousal. The sexual practice is variously called asphyxiophilia, autoerotic asphyxia, hypoxyphilia. Colloquially, a person engaging in the activity is sometimes called a gasper. The erotic interest in asphyxiation is classified as a paraphilia in the Diagnostic and Statistical Manual of the American Psychiatric Association.

. A court cannot by implication supply in a statute a provision which is reasonable to suppose the legislature intended intentionally to omit. When it is urged that a particular statute should be construed to cover a matter not expressly mentioned in the act, the courts frequently assert that, if the legislature had intended the statute to include the matter in question, it would have been easy for them to have said so and to have expressly included it. The court reasons that the failure of the legislature to include the matter within the scope of the act indicates that its exclusion was intended, and the court refuses to insert the matter in the statute on the ground that it has no power to make such judicial legislation. (See People v Hell, 28 Misc 3d 215 [Rye City Ct 2010].)

. The defendant’s citations of People v Bruno (47 AD3d 1064 [3d Dept 2008]) and People v Delph (269 AD2d 218 [1st Dept 2000]) discuss the element of physical injury required for assault prior to the enactment of Penal Law § 121.11.

. A crime is a lesser included offense when it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree. Where it is legally possible to attempt *1020 to commit a crime, an attempt to commit such crime constitutes a lesser included offense with respect thereto. (CPL 1.20.)

. Unless one strangles another without the intent to harass, annoy or alarm them.

. This court finds it difficult to conceive a situation when a person would attempt to block another’s air flow without the intent to annoy or alarm them, except in the case of consensual sex.