■ In the Matter of JESSE Z., a Person Alleged to be a Juvenile Delinquent. Franklin County Attorney, Respondent; JESSE Z., Appellant. [983 NYS2d 651]—

Stein, J. Appeal from an order of the Family Court of Franklin County (Main Jr., J.), entered September 21, 2012, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 3, to adjudicate respondent a juvenile delinquent.

Petitioner commenced this juvenile delinquency proceeding against respondent (born in 1996) based upon allegations that he lured the victim—a 14-year-old female classmate—to a back stairway in their school, where he put his arm around the victim's neck and caused her to lose consciousness. Following a fact-finding hearing, Family Court found that respondent had committed acts which, if committed by an adult, would constitute the crime of strangulation in the second degree. Respondent was adjudicated a juvenile delinquent and, after a

---

dispositional hearing, was placed on probation for 24 months. Respondent now appeals, and we affirm.

Respondent asserts that Family Court's determination was not supported by legally sufficient evidence and was against the weight of the evidence. A person is guilty of strangulation in the second degree when he or she (1) applies pressure on the throat or neck of another person or blocks the nose or mouth of such person, (2) with the "intent to impede the normal breathing or circulation of the blood of [such] person" (Penal Law § 121.11) and (3) "causes stupor, loss of consciousness for any period of time, or any other physical injury or impairment" (Penal Law § 121.12; *see People v Carte*, 113 AD3d 191, 193 [2013]; *People v White*, 100 AD3d 1397, 1398-1399 [2012]). Intent to impede a victim's breathing may be inferred from the perpetrator's actions and the surrounding circumstances (*see People v Carte*, 113 AD3d at 195; *People v Figueroa*, 40 Misc 3d 1010, 1019 [2013]). Here, respondent argues that his intent to impede the victim's breathing was not proven beyond a reasonable doubt. We disagree.

Certain facts regarding the incident are undisputed. Respondent and the victim were students at the same high school and had known each other for years, but were not friends. On the day of the incident, they were walking up an infrequently used stairway leading to the boys' locker room and the gymnasium, the door to which respondent had opened for the victim from the inside. Near the top of the stairway, while respondent was behind the victim, he put his arm around her neck and applied pressure, after which the victim collapsed and appeared to lose consciousness. When she regained consciousness, respondent had his hand over the victim's mouth and she became upset, slapped respondent, cursed at him and ran out of the stairway.

Beyond that, the victim's version of the incident diverges from that of respondent. The victim testified that, the previous school year, she had declined respondent's invitation to go out on a date with him. In addition, respondent had previously approached her and told her that another student at their school named Cole had taken compromising photographs of her, made copies of them and placed them somewhere in the school. According to the victim, on the day of the incident, she entered the back stairway with respondent because he had just told her that it led to the location of the photos. As they got to the top of the stairs, respondent put his arm around her neck and squeezed her neck tightly, until she lost consciousness. While respondent was applying pressure to her neck, he covered her mouth with his hand. When the victim regained consciousness,

she was in a "lying position," and respondent still had his hand over her mouth and his arm around her neck. He told her to "stop moving" and that he did not "want to hurt [her]," but that Cole "had him do it." The victim, was "freaking out," slapped respondent across the face, picked up one of her shoes, which had fallen off during the incident, and ran into the gymnasium, where she told two other students what had occurred. One of the students testified that he saw the victim coming from the direction of the boys' locker room, she was sobbing, somewhat hysterical, had redness around her neck and chest and was holding one shoe in her hand. The victim told him that another student had lured her into a back hallway with information about naked photos and then grabbed her by the neck.

Peter Glad, a police officer, testified that respondent initially denied knowing why the police were at the school and that, upon being taken into custody, also denied any involvement in the incident, but eventually admitted that he had put the victim in a headlock and demonstrated how he did so. In his testimony, respondent admitted that he put his arm around the victim's neck, but denied knowing anything about inappropriate photos of the victim and claimed that he went into the stairway with her because she asked him to show her where it led. Although there was video surveillance indicating otherwise, respondent denied having any significant conversation with the victim before they entered the stairwell. Respondent also claimed that he was just "horsing around" when he put his arm around the victim and that, when her legs gave out, he got scared. According to respondent, the incident transpired in 10 to 15 seconds, he put "almost no pressure on [the victim's neck]," he released her very quickly, he was joking around and he never meant to hurt or choke her. He also claimed that he only put his hand over her mouth after she regained consciousness in order to keep her quiet so that he could explain what happened.

Family Court concluded that petitioner established beyond a reasonable doubt that respondent applied pressure on the victim's throat and neck and intended to impede her normal breathing, as a result of which the victim lost consciousness. Significantly, in reaching this conclusion, Family Court indicated that it found portions of respondent's testimony to be "incredible and awfully fool hardy." Although the victim's testimony conflicted with respondent's and there were no other eyewitnesses to the incident, the victim's testimony was not inherently incredible (see Matter of Devin Z., 91 AD3d 1035, 1036 [2012]). Considering the totality of the circumstances—includ-

ing, among other things, that respondent led the victim to a secluded stairwell on the faulty premise that compromising photos of the victim were located there—when we view the evidence in a light most favorable to petitioner (*see Matter of Timothy HH.*, 41 AD3d 913, 914 [2007]), we conclude that the evidence presented was legally sufficient to establish that respondent's "conscious objective" (Penal Law § 15.05 [1]) in putting his arm around the victim's neck was to impede her normal breathing (*see* Penal Law §§ 121.11, 121.12; *Matter of Clarence D.*, 88 AD3d 1074, 1074 [2011]; *Matter of Anthony E.*, 82 AD3d 1544, 1544-1545 [2011]; *Matter of Brittenie K.*, 50 AD3d 1203, 1205 [2008]; *Matter of Shane EE.*, 48 AD3d 946, 947 [2008]; *Matter of Brooke II.*, 45 AD3d 1234, 1234 [2007]; *Matter of Jeremy R.*, 266 AD2d 745, 746 [1999]). Moreover, while a different determination would not have been unreasonable, when we view the trial evidence in a neutral light, along with the rational inferences to be drawn therefrom, and defer to Family Court's credibility assessments, that court's finding that respondent committed acts which, if committed by an adult, would constitute the crime of strangulation in the second degree is not against the weight of the evidence (*see Matter of Devin Z.*, 91 AD3d at 1036; *Matter of Clarence D.*, 88 AD3d at 1075; *Matter of Gordon B.*, 83 AD3d 1164, 1166 [2011], *lv denied* 17 NY3d 710 [2011]).

Lahtinen, J.P., McCarthy and Garry, JJ., concur. Ordered that the order is affirmed, without costs.